STATE, *ex rel.* CHARLES O. ANDREWS, DOYLE E. CARLTON,
CLAUDE PEPPER, v. R. A. GRAY, as Secretary of State.

169 So. 501.
En Banc.
Opinion Filed July 23, 1936.

2

*J. B. Hodges, H. H. Wells, Herman Ulmer* and *C. L. Waller,* for Relators;

*Cary D. Landis,* Attorney General, and *Roy Campbell* and *J. Velmar Keen,* Assistant Attorneys General, for Respondent.

PER CURIAM.—A petition was presented to this court for an alternative writ of mandamus to require the Secretary of State to accept the oaths and filing fees tendered to him by the relators who desire to become candidates for nominations in a special primary election called by a party State executive committee to nominate party candidates to fill vacancies in the office of United States Senators from Florida, such vacancies having occurred too late for party candidates to be nominated in the general primary election held in June, 1936, and the Governor having issued "writs

of election to fill such vacancies" at the next general election on November 3, 1936, pursuant to Article XVII of the Federal Constitution and Section 457 (392) C. G. L.

A rule *nisi* was issued by this court to the Secretary of State to show cause why an alternative writ of mandamus should not issue as prayed. The respondent Secretary of State demurred to, and moved for a discharge of, the rule *nisi* upon grounds that the law does not authorize the holding of a special primary election to be held in the manner prescribed in the primary election laws and that consequently it is not the duty of the Secretary of State to accept the tendered oaths and filing fees.

Four of the Justices of the Supreme Court concurred in ordering an alternative writ of mandamus to be issued as prayed by the petition. Two Justices dissented. Several opinions were filed giving the views of the Justices of the court upon the issue presented.

An alternative writ of mandamus was issued as prayed for, returnable July 30, 1936.

DAVIS, J.—Relators are each residents and citizens and qualified electors of the State of Florida and members of the Democratic Party of this State. The respondent is the duly elected, qualified and acting Secretary of State of the State of Florida.

Article 2, Chapter 1, Title IV, of the Compiled General Laws of Florida (Sections 299 to 362, both inclusive, Revised General Statutes of Florida), relates to and mandatorily requires the nomination of all candidates for elective State, Congressional and County offices, and for United States Senator, by political parties defined in said Article, to be made in primary elections to be held according to the regulating provisions of state law and not otherwise. Under Section 356 C. G. L., 300 R. G. S., the Democratic Party and

the Republican Party having each polled the required percentage of the total vote cast at the 1932 General Election necessary to bring them within the terms of the primary election statutes are, at this time, the only political parties subject to the foregoing statutes. Other provisions of the primary laws constitute the Secretary of State the statutory filing officer to receive and file candidates' qualification papers in the case of any of the statutory primaries authorized to be held for the nomination of candidates for the office of United States Senator, or other elective state offices voted for in more than one county.

On May 8, 1936, the Honorable Park Trammell died, leaving a vacancy in the office of junior United States Senator from Florida. On June 17, 1936, the Honorable Duncan U. Fletcher died, leaving a vacancy in the office of senior United States Senator from Florida. The laws of Florida required the holding of general primary elections in the year 1936 consisting of a first primary held June 2, 1936, and a second primary held June 23, 1936. Under the circumstances related, the death of the Honorable Park Trammell and the death of the Honorable Duncan U. Fletcher, each occurred at a time when it was too late under the laws of the State of Florida for a candidate for the Democratic nomination for the vacant offices of the United States Senate to become candidate for such nomination by the Democratic Party in the general primary elections heretofore held June 2nd and June 23rd, 1936, respectively.

In consequence of the situation aforesaid, the State Democratic Executive Committee, at a meeting duly convened and held on June 30, 1936, adopted a resolution calling special primary elections to be held on August 11, 1936, and on September 1, 1936, respectively, for the purpose of nominating candidates of the Democratic Party to be voted

upon in the general election in November, 1936, to succeed the Honorable Park Trammell and the Honorable Duncan U. Fletcher, pursuant to certain writs of election that had been issued by the Governor of the State in compliance with the 17th Amendment to the Federal Constitution. Such writs of election provide for choosing, at the November, 1936, General Election, two United States Senators to fill the respective vacancies caused by the aforesaid deaths of the two United States Senators from Florida.

Acting pursuant to the said resolution of the State Democratic Executive Committee, which had been duly certified to and filed with the Secretary of State, and proceeding according to law, as they each allege in their petition for mandamus to this Court, the several relators who brought this proceeding, each tendered to the respondent, Secretary of State, their filing fees of 3% of the annual salary of the office of United States Senator, and otherwise conformed to all other requirements of the statutes of the state essential to be complied with as a condition precedent to qualification as candidates for the Democratic nomination for the office of United States Senator to be voted on at the said primaries of August 11th and September 1, 1936.

It is duly alleged that each of the relators is legally qualified under the Constitution and laws of the State of Florida, and of the United States, to hold the office for which each relator desires to be nominated, and that each of them has filed with the respondent Secretary of State a proper oath to that effect, as provided by statute.

It is thereupon alleged that notwithstanding the matters and things aforesaid, all of which have been duly alleged in relators' petition for an alternative writ of mandamus, that respondent Secretary of State has declined and refuses to accept the filing fee and qualification oath tendered by

each of the relators on the ground that there is no clear legal duty upon said respondent to accept such filing fees from relators, nor any proper legal function on respondent's part to participate in the performance of duties incident to the holding of special primary elections called solely upon the purported authority of a resolution of the State Democratic Executive Committee without there being any specific sanction of law to be found in the statutes authorizing the calling and holding of such special primary elections under the general primary laws of the state.

Because of the importance of the matter to the people of Florida and by reason of the grave doubts entertained by members of the Court as to the right of the relators to coerce the respondent in the particulars commanded in the proposed alternative writ sought, this Court adopted the strict procedure of the common law and issued its rule *nisi* in mandamus directed to the respondent, requiring him to show cause why the alternative writ of mandamus as prayed for should not be issued. Ferriss Extraordinary Legal Remedies, page 279. A motion to discharge the rule and a demurrer to the same raise the questions of law which have been argued at length before the Court *en banc,* and which will be hereinafter discussed.

The issuance of a rule *nisi* in a mandamus proceeding directed to a respondent requiring him to show cause why an alternative writ prayed for should not be issued, is the procedure of the common law and is applicable in this state. 38 C. J. 908. While in ordinary cases the Florida courts have abandoned the rule *nisi* and have adopted the practice of issuing an alternative writ upon an *ex parte* hearing of a petition for such writ, yet in particular cases suggesting doubt as to the propriety of the court's acting at all in the special situation complained of, this Court adheres to the

strict common law procedure of a rule *nisi* when it appears
that such practice best serves the ends of justice by per-
mitting interested parties other than the respondent to ap-
pear and be heard in opposition to the issuance of an al-
ternative writ in a case where a mandamus may not be an
appropriate remedy. The proper response to such a rule
*nisi* is a motion to discharge or demurrer. Such was the
procedure adopted and followed by the respondent in this
case.

Sections 383, 385 and 386, C. G. L., 326, 328 and 329
R. G. S., require a candidate for nomination for the office
of United States Senator in primary elections to file with
the Secretary of State a qualification oath and to pay to
him a prescribed qualification fee. According to the re-
sponse to the rule *nisi* issued in this case, the reason ad-
vanced by the respondent for his refusal to comply with
the terms of the aforesaid statutes in this particular instance
is that there is no statute of the State of Florida authoriz-
ing the calling of *special* primary elections on dates specified
solely by the State Democratic Executive Committee, nor
any authority of statutory law sanctioning the holding of
any such primary elections when called, and that therefore
the ministerial duties imposed on the Secretary of State by
these Sections must be restricted in their application to the
regular statutory general primary elections required to be
held in June of the General Election years pursuant to Sec-
tion 2 of Chapter 13761, Laws of Florida, Acts of 1929.

In the case of State, *ex rel.* Summer, v. Mitchell, 118
Fla. 513, 150 Sou. Rep. 775, this Court distinguished be-
tween a vacancy *in nomination* and a vacancy *in office*
insofar as the statutory power of a Democratic Committee
to fill one or the other kinds of such vacancies was con-
cerned. The holding in that case was, since the general

primary laws of the state could not *ex necessitate rei* apply to and govern nominations to fill vacancies *in office* as distinguished from vacancies *in nomination,* in cases when the vacancy in office occurred too late to be filled by a nomination at one of the general primary elections provided by law, that choice as to the method of making a party nomination in such an emergency inherently devolved upon the appropriate Executive Committee and that therefore such appropriate Executive Committee of the political party affected was not without its ordinary party authority to nominate a candidate for the vacancy in office to be voted on at the next ensuing general election, even though no specific provisions of the primary statutes in terms purported to authorize such a course of action as would govern such a situation.

The mandamus prayed for in the present case is predicated upon the same rationale of decision.

Here the contention is, *not* that the State Democratic Executive Committee does not have the inherent party power to nominate Democratic candidates for the vacant offices of United States Senator, but that it has no choice of methods in doing so. That is to say, that it has no choice, through its own Executive Committee to take action providing for special primary elections to be called and held under the sanction of the primary election statutes, simply by virtue of a resolution adopted and filed by it with the Secretary of State to that effect. And in this connection it is well to reiterate at this point that under the controlling ratio *decidendi* of the Mitchell case, *supra,* we have no doubt that it is entirely within the province of the State Democratic Executive Committee (or of the Republican State Executive Committee, as the case may be) to select its own committee nominees for the vacant offices here in-

volved without necessarily resorting to the calling and holding of special primary elections for making nominations of the Democratic candidates for the vacant offices of United States Senator now existent, unless it is so desired.

So in this case the major proposition required to be considered is whether or not the party committee authority is still recognized under the statutes of the State of Florida by means of which the appropriate Executive Committee of a political party subject to and required to be governed by our primary statutes, may, at its option, call and hold special primary elections for the purpose of nominating party candidates for vacancies in the office of United States Senator that are shown to have occurred subsequent to the general primaries already held, but prior to the succeeding general election, in a situation where the Committee, by its resolution, has decided and determined that it is in the public interest that nominees for such vacancies in office be elected by the party electors at special primaries, instead of being chosen solely by the action of the Executive Committee on its own responsibility?

As a corollary to the foregoing proposition another may be stated as follows: Assuming that it is still within the inherent political party authority of the appropriate Executive Committee of one of the major political parties subject to the general primary laws of the state to call and hold special primaries for the purpose of nominating its party candidates for vacancies in elective offices that have occurred subsequent to the general primary already held, but prior to the preceding general election, do the special primaries so ordered solely by action of the party executive committee *ipso facto* fall within the governing and regulating sanction of the general primary laws that have been enacted to govern that same party's general primary elec-

tions mandatorily required to be held by it according to state law at stated statutory intervals?

It is our view that the Florida Primary Laws do contemplate that when vacancies in elective offices occur subsequent to a general primary, but prior to the succeeding general election, that special primaries may be, but are not mandatorily required to be, called by the appropriate executive committee of political parties subject to the primary statute and that when the option to so call and hold same has been exercised by the appropriate committee and a resolution evidencing the call has been duly filed with the respondent officer with whom candidates in such primaries are required by statute to qualify for the general primary elections, that thereupon the general machinery of the law for the regulation of primary elections generally, and the declaration of the results thereof, are thereby set in motion and thereupon such special primary elections are to be considered as governed and regulated in all particulars as if the same were general primary elections held on one of the statutory dates prescribed therefor by law. This conclusion is reached and expressed upon what we regard is consistent with the intent and spirit of the primary laws themselves, the express language used therein, the implications necessarily flowing therefrom, a consideration of the evils sought to be remedied thereby, and the trend of the decisions of this Court heretofore rendered by us by which our primary laws have been considered and construed.

A primary election is the initial step in our system of elections looking to the nomination of candidates whose names are to find a place on the official general election ballot. The purpose of a primary election is to give vitality to the constitutional guaranty of a free and untrammeled ballot by affording freedom of choice of candidates to the indi-

vidual party voter who may be expected to support the party nominees at the ensuing general election. The honest conduct of a primary election is therefore not less important than freedom in expresssion of choice as between candidates on the final election is generally regarded as indispensable. Indeed the voting strength and solidarity of the dominant political party in a state like the State of Florida is such that the contest for nomination of candidates of such dominant party is universally regarded as equivalent to a general election.

Therefore, because of the public importance of securing proper party nominations, the regulation of party primary elections, and the institution of official state controlled primaries to be conducted and held at public expense, and under the eye of public officials, are universally held to be proper subjects for legislative action. And a statute providing for primary elections by political parties that cast a prescribed percentage of the votes polled at the last general election is not rendered violative of the Constitution of this state, nor of the 14th Amendment to the Constitution of the United States, because it commits to the controlling party committee the power to prescribe the purpose, time, manner and conditions of the holding of such primary elections and the party qualifications of the electors eligible to participate therein as members of the party holding such election, while at the same time requiring the primary elections so called to be paid for out of public funds. State, ex rel. Webber, v. Felton, 75 Ohio 554, 84 N. E. Rep. 85, 12 Ann. Cas. 65. In such cases, says the Supreme Court of Ohio: "There is no delegation of legislative power, but only regulation of a power already possessed by the party" to call and hold its primaries at such times it may desire in the absence of state law providing a statutory date. The

fixing of a time for calling and holding party primaries for making party nominations of candidates of political parties has been a party prerogative from time immemorial and absent restrictive legislation requiring the holding of such primaries on a statutory day or days, the choice of dates is a matter for the party affected to decide.

Thus, while there has been a marked change brought about by our state primary statutes in the matter of nominating candidates for public office, it must not be assumed that because the Legislature has intervened and adopted a general primary election law that is supreme over the party will in the field in which it is designed to operate, that it has thereby removed all the power that once vested in the party organization, through its appropriate convention or party executive committee, to control its affairs and actions in particulars whereon the Legislature has not spoken.

Prior to the adoption of our primary election laws, the regulatory power of the dominant political party of this state was inherently vested in its convention or appropriate party executive committee, which, as an incident to the organization of its membership into a political party, became thereby possessed of the self-governing power to prescribe the purpose, time, manner and conditions for holding party primary elections and determining qualifications of its own membership in all cases where such plan of nomination was an essential tenet of party policy. It is only because the statutes of the State of Florida constituting the body of our primary laws have specifically undertaken to regulate particular matters formerly controlled only according to party law, that many of the inherent powers of political party committees and conventions subject to such primary laws have been curtailed and made subordinate to the legislative procedure prescribed by authority of the state under

Section 26 of Article III, Constitution of Florida, in the interest of honesty and fair play.

The present primary law was passed in 1913 as Chapter 6469, General Laws of that year. It became popularly known as the "Bryan Primary Law," and the principal difference between that Act and the original 1901 primary law (Chapter 5014, Laws of 1901) insofar as governmental policy is concerned was that the 1913 law provides for *compulsory* primaries on dates fixed by the Legislature, whereas the 1901 law left the determination as to whether or not primaries should be held to the option of the affected political parties whose inherent prerogative such option was admitted to be in the absence of a mandatory provision of statute providing for compulsory primaries, fixing their dates and regulating same.

The 1913 Act abolished the option of the major political parties of this state to proceed or not, as they saw fit, to make their nominations by way of primaries instead of some other method by making it compulsory upon the political parties affected by its terms to nominate candidates by primary election, and by no other method, in ordinary cases. See Section 355 C. G. L., 299 R. G. S.

When Chapter 6469, Laws of 1913, providing for compulsory primaries was enacted, the pre-existing primary law, Chapter 5014, Laws of 1901, was not thereby expressly repealed. Therefore, the terms of the earlier Act acknowledging in political parties the possession of their inherent party rights to call or not to call primary elections as they might see fit, in cases where mandatory elections were not expressly provided for, may be said to have been brought forward into, and re-enacted in the 1913 Act in the language of Section 361 C. G. L., 305 R. G. S., as amended by Chapter 13751, Acts of 1929, insofar as such subsequent

law provides that: "Each committee and its officers shall have the powers usually exercised by such committees and by the officers thereof not inconsistent with provisions of this article." So it is that all ordinary party powers that were recognized as the prerogative of party executive committees under the 1901 Act, are continued in force by the express recognition thereof in the terms of the 1913 Act and Acts amendatory thereof, insofar as the implied existence of such original powers may not be inconsistent with and repugnant to the express or implied provisions of the "Bryan Primary Law" and its amendments.*

In the case of State, *ex rel.* Summer, v. Mitchell, 118 Fla. 513, *supra,* it was distinctively pointed out that where there is a vacancy in an elective office occurring after the time for candidates to qualify at the general primary elections but prior to the subsequent general election, that the mandatory provisions of the general primary laws requiring candidates of the Democratic Party in this state to be nominated in the compulsory party primary elections in order to have their names as such printed on the general election ballots under Amended Section 312 C. G. L., 256 R. G. S., do not control. Accordingly it was held to be simply a matter of customary party activity for the party executive com-

---

*The legal effect of the Florida Primary Election Statutes is to make the State Executive Committee of the dominant political parties subject to them, the respective representatives of such parties when acting in lawful assembly and thereby to extend recognition to such Executive Committee as the organs of expression of such parties for the declaration of their party principles, and the formulation of party policies, with like effect as if such State Executive Committees were regularly called party convention, since such State Executive Committees are required to be elected directly by the party voters at the prescribed party primaries.

mittees to make their own nominations in cases where the subject matter of party action was neither expressly or impliedly regulated by statutory provisions to the contrary. There was no intimation intended in that case to the effect that the committee method of making nominations was to be deemed and held to be the exclusive "customary party activity" that had to be resorted to in order to have the name of the party nominee printed on the ensuing general election ballots under amended Section 312 C. G. L., *supra* (Chapter 14657, Acts of 1931), in a case where, because of a vacancy in office occurring after the opportunity to nominate in the general primaries has elapsed, but before the succeeding general election, no nominees of the affected major political party could be had through the general primary elections held on the statutory dates.

Only when one of the major political parties of this state subject to the primary election laws has had the statutory opportunity to lawfully make its nominations for offices capable of being voted for in the regularly established June primaries, and has failed and neglected to do so as provided and required by such primary election laws, does such party forfeit its inherent party right to seasonably make executive committee nominations, or, at its option to call and hold special primary elections, in order to have the names of its nominees for such offices as selected by it, printed on the ensuing general election ballots in accordance with Amended Section 312 C. G. L., *supra,* as party candidates of such major political parties for the offices required to be filled at such ensuing general election. See: State, *ex rel.* Chamberlain, v. Tyler, 100 Fla. 1112, 130 Sou. Rep. 721; State, *ex rel.* Summer v. Mitchell, 118 Fla. 513, 159 Sou. Rep. 775.

Specific references to "special primary" elections as well

as "general primary" elections are to be found in the statutes of this state. See Section 267, 381, 8140 C. G. L., 324 and 5877 R. G. S. Ten references are contained in the statutes to "general" primary elections, as distinguished from the so called "special" primary elections. See Sections 355, 363, 364, 365, 366, 369, 382, 383, 8140 C. G. L., 299, 307, 308, 309, 310, 312, 325, 326, and 5877 R. G. S. Construing these references in connection with the acknowledged powers of party executive committees that were "usually exercised" by such committees at the time the Bryan Primary Law (Chapter 6469, Acts 1913) was enacted, and which that statute purports to preserve and continue unimpaired by virtue of Section 361 C. G. L., 305 R. G. S. (as amended by Section 3 of Chapter 13761, Acts 1929), it follows as a logical conclusion that the choice of the method of making party nominations, whether by the committee itself, or by means of special primaries, to nominate candidates for elective state offices that have become vacant too late to be voted on at the general June Primary elections, but which are contemplated to be filled at the ensuing general election that will intervene before another general June Primary election can be held in the ordinary course of law, is a prerogative of the appropriate executive committee and constitutes the enjoyment of a power usually exercised by such committee within the purview of amended Section 361 C. G. L., *supra.* Hence, where a special primary is selected as a method of nomination in such instances, the special primary so called, becomes a political activity of one of the major political parties subject to the control of the primary statutes of this state, and such special primary elections when so called and held must be considered the making of the involved party nominations in primaries conducted and held under state supervision, and at public expense "in

the manner provided in this Article (Sections 355 C. G. L., 299 R. G. S., *et seq.*) and not otherwise." This in turn makes it the clear legal duty of the responsible state and county offices to perform the statutory functions and to take the prescribed legal steps necessary to be taken to render the execution of the primary statutes effective as to such special primaries when so called and provided to be held in such special instances.

The fact that our primary election laws have been so framed as to make it possible for the Democratic and Republican Parties, as the major recognized political parties of this state, to have called and held, with respect to the existing vacancies in the two offices of United States Senator from Florida, four separate primaries on divergent dates, thereby forcing the carrying out at public expense of two separate series of first and second primary elections, goes to the policy and wisdom, not to the applicability or enforceability of the primary election statutes as they were intended to be given force and effect as a design to police, supervise and regulate the political activities of such major parties because of their invidious effect on the public welfare if not so regulated.

In this connection it is pertinent to observe that it would hardly be contended that a like situation would not prevail should the Legislature intentionally or inadvertently repeal Section 2 of Chapter 13761, Acts of 1929, fixing the dates for holding the regular primary elections. But in such circumstances could it be argued that the deletion of said Section 2 of said Chapter 13761, *supra,* would render inoperative or invalid the remainder of the primary election laws that would remain after such deletion? The legislative *casus omissus* as to a method of fixing one and the same series of dates for holding special primaries where the two

separate parties may be involved, can be easily remedied by the Legislature's authorizing the Governor to fix one set of dates for such special primaries in cases when both parties exercise their option to have primaries and they cannot agree on the same days for holding such primaries.*

At the bar the suggestion was made that to hold as we have held in this opinion with respect to the validity of the special primaries here in controversy, could only be accomplished as an act of judicial legislation on the part of the Justices of this Court. But eminent authority is to the contrary. It is always inherently within the scope of *judicial* process itself for the judges to so interpret the sense of our statutory laws evidenced by legislative acts, codes, ordinances, and the like, as to supplement the intendments of the positive words, fill in the vacant spaces, and by the same methods and processes that have built up all of our customary law in the past, correct uncertainties and harmonize results with justice through a method of judicial decision that looks through the transitory particulars of a scheme expressed in a statute, and perceives the permanent intent and policy of the law that lurks behind the mere words of a statutory enactment.

Such pragmatic vitalizing of the judicial process has been best expressed by Mr. Justice CARDOZO, now of the United States Supreme Court in his excellent series of lectures entitled "The Nature of the Judicial Process," which is now an accepted text-book authority on that subject, approved by all first class law schools, as follows (pages 14-16):

"Where does the judge find the law which he embodies in his judgment? There are times when the source is ob-

---

*Similar to the method provided for adjourning the Legislature by action of the Governor when the two Houses shall fail to agree on a time. See: Section 10 of Article IV, State Constitution.

vious. The rule that fits the case may be supplied by the Constitution or by statute. If this is so, the judge looks no farther. The correspondence ascertained, his duty is to obey. The Constitution overrides a statute, but a statute, if consistent with the Constitution, overrides the law of judges. In this sense, judge-made law is secondary and subordinate to the law that is made by legislators. It is true that codes and statutes do not render the judge superfluous, nor his work perfunctory and mechanical. There are gaps to be filled. There are doubts and ambiguities to be cleared. There are hardships and wrongs to be mitigated if not avoided. Interpretation is often spoken of as if it were nothing but the search and the discovery of a meaning which, however obscure and latent, had none the less a real and ascertainable pre-existence in the legislator's mind. The process is, indeed, that at times, but it is often more. The ascertainment of intention may be the least of a judge's troubles in ascribing meaning to a statute. 'The fact is,' says Gray in his lectures on the 'Nature and Sources of the Law,' 'that the difficulties of so-called interpretation arise when the Legislature has had no meaning at all; when the question which is raised on the statute never occurred to it; when what the judges have to do is, not to determine what the Legislature did mean on a point which was present to its mind, but to guess what it would have intended on a point not present to its mind, if the point had been present.' So Brutt: 'One weighty task of the system of the application of law consists then in this, to make more profound the discovery of the latent meaning of positive law. Much more important, however, is the second task which the system serves, namely the filling of the gaps which are found in every positive law in greater or less measure.' You may call this process legislation, if you will. In any event, no

system of *jus scriptum* has been able to escape the need of it. Today a great school of continental jurists is pleading for a still wider freedom of adoption and construction. The statute, they say, is often fragmentary and ill-considered and unjust. The judge as the interpreter for the community of its sense of law and order must supply omissions, correct uncertainties, and harmonize results with justice through a method of free decision *'libre recherche scientifique.'* "

What has been said is sufficient to demonstrate the propriety of issuing the alternative writ of mandamus sought in this case, so the motion to discharge the rule *nisi* is denied and the demurrer to same overruled with directions that the alternative writ of mandamus do issue as prayed, returnable on an early date to be specified therein by the Clerk of this Court.

Let an order be entered accordingly.

WHITFIELD, C. J., concur.

BROWN, J., concurs specially.

BUFORD, J., joins in the order to issue alternative writ but does not concur in opinion.

ELLIS, P. J., and TERRELL, J., dissent.

WHITFIELD, C. J. (concurring).—There is a vacancy in each of the two offices of United States Senator from Florida to be filled at the general election to be held in the State of Florida on November 3, 1936.

The vacancies in the stated offices occurred too late for party candidates to be duly nominated at the general primary elections held in June, 1936, and the question presented is whether a *special* primary election called by a party State executive committee to nominate party candidates should be conducted "in the manner provided" by the statute for nom-

inating party candidates for election as United States Senators from Florida.

The Federal Constitution provides that:

"When vacancies happen in the representation of any State in the Senate, the executive authority of such State shall issue writs of election to fill such vacancies: Provided, that the Legislature of any State may empower the executive thereof to make temporary appointment until the people fill the vacancies by election as the Legislature may direct." Art. XVII.

A Florida statute provides that:

"Should a vacancy happen in the representation of this State in the Senate of the Congress of the United States, the Governor shall issue writs of election to fill such vacancy at the next general election; and the Governor may make temporary appointments until the vacancy is filled by election." Sec. 457 (392) C. G. L.

Under the above organic and statutory provisions, when a vacancy happens in the office of United States Senator from Florida, "the Governor may make temporary appointments until the vacancy is filled by election as the Legislature may direct," and "the Governor shall issue writs of election to fill such vacancy at the next general election." Statutes of the State require that party nominations of candidates for election to the office of United States Senator "shall be made in the manner provided" in the statute, "and not otherwise"; and that "the name of no person" not so nominated "shall be placed upon the official ballots to be voted at any general election, as a candidate for any office, when provision is made herein for nominating candidates for such office, unless such person shall have been nominated for such office under the provisions of this Article." Sec. 355 (299) C. G. L.

When the above statute was enacted in 1913 it provided for party candidates for elective offices to be nominated by primary elections only. Later certain of such nominations were authorized to be made by party executive committees upon the happening of stated contingencies. See Sec. 411 (354) C. G. L. Supplement 1934 and 1936, Chap 13761, Acts of 1929. Whether under the above quoted organic provisions the "writs of election" required to be issued by the Governor do not require a call for nominations *under the statute* to select party candidates to fill the vacancies in office referred to herein, so as to have a legal and effective compliance with the organic command for "an election to fill such vacancies" "at the next general election," has not been discussed by counsel in this case.

The Federal Constitution provides that when vacancies happen in the offices of United States Senators "the executive authority of the State shall issue writs of election to fill such vacancies"; and the Florida statute provides that "the Governor shall issue writs of election to fill such vacancy at the next general election." As nominations *under the statute* are essential to the placing of the names of party candidates upon the general election ballots, it may be that the "writs of election to fill such vacancies" in offices commanded to be issued by the Governor by both the Federal Constitution and the State statute, by implication of law require nominations to be "made in the manner provided" in the statute; for otherwise the commanded "writs of election to fill such vacancies" might be ineffectual to comply with the intent of the organic and statutory provisions, if the names of party candidates are not legally put upon the general election ballots, so that vacancies in the offices may be filled at the next general election, as required by the Federal Constitution and by State statute. The Gov-

ernor can only make "temporary appointments until the people fill the vacancies by election as the Legislature may direct."* Legislation has been enacted as contemplated by the Federal Constitution, Article XVII.

The statutes prescribing the manner of making nominations that are prerequisites to a legal placing of the names of party candidates on the official general election ballots should be interpreted so as to effectuate and not to frustrate controlling organic law. Such statutory provisions are expressly made applicable to the nominations of party candidates for election as United States Senators. The statutes expressly require the nominations of party candidates for United States Senators to be made under the provisions of the statute, and not otherwise, before the next general election.

Where statutes are designed to effectuate the intent of organic commands or to serve a general public purpose, the provisions of the statute, with all fair and lawful implications needed to make the lawmaking intent efficacious, should be so interpreted and applied as to completely effectuate the organic and statutory commands, purposes and intendments, in the absence of other controlling law.

The Federal Constitution originally provided that "if vacancies happen" in the offices of United States Senators, "the Executive" of the State "may make temporary appointments," and it was held by this Court that the Secretary of State may by mandamus be required to countersign

---

*On May 26, 1936, Governor Sholtz appointed Hon. Scott M. Loftin to succeed Senator Park Trammell, who died May 8, 1936, the appointee to serve "until the vacancy is filled by election as provided by law"; and on July 1, 1936, the Governor appointed Hon. W. L. Hill to succeed Senator Duncan U. Fletcher, who died June 17, 1936, the appointee to serve "until his successor has been duly elected and qualified as provided by law."

24

and seal with the Great Seal of the State a commission issued by the Governor to his appointee to fill a vacancy in the office of United States Senator from Florida. The Federal Constitution authorized only a "temporary appointment" by the Governor and did not require such appointment to be authenticated by a commission or in any other manner; but as the Governor desired *to issue a commission* to his appointee, it was held that the commission was not complete until it had been countersigned and sealed by the Secretary of State, though the State, under Section 14, Article IV, of the Florida Constitution and the Federal or State laws did not *expressly* require or authorize a commission to be issued to an appointee as United States Senator. In effect it was held that by implication the State law intended that a completed commission should be issued to an appointee as United States Senator from Florida. State, *ex rel.,* v. Crawford, 28 Fla. 441, 10 So. 118.

When vacancies happen in the office of United States Senator, the Federal Constitution expressly requires the Governor to "issue writs of election to fill such vacancies"; and the State statute expressly requires the governor to "issue writs of election to fill such vacancy at the next general election"; and a party nomination to fill such vacancies is *expressly* required to be made as commanded by the statute before the names of party candidates to fill the vacancies can be placed upon the official ballots at the general election. So nominations of party candidates under the primary election statutes are by the statute made essential to elections to fill vacancies in the offices of United States Senators from Florida as commanded by the dominant organic law; and the statutes should be interpreted to make effective the organic command as to "writs of election to fill vacancies" in the offices of United States Senators.

In State, *ex rel,* v. Mitchell, 118 Fla. 513, 159 So. 775, the implications of the primary election law as to special primary elections and the controlling effect of applicable organic provisions were not involved or discussed. The questions there considered related to the legal status under the particular facts of that case, of a candidate nominated by a party executive committee for an elective county office that had become vacant after the general primary elections. In this case the consideration relates to the provisions and legal implications of the primary election laws relating to special primary elections, interpreted with reference to the express commands of paramount organic law as to elections to fill vacancies in the offices of United States Senators, the provisions of the primary election laws being made an indispensable part of the system of elections to fill elective offices under the controlling organic law. State, *ex rel.* v. Dyer, 109 Fla. 33, 148 So. 210; State, *ex rel.,* v. Gerow, 79 Fla. 804, 85 So. 144; *Ex parte* Hawthorne, 116 Fla. 608, 156 So. 619.

In this case the party State executive committee has not itself made nominations of party candidates for United States Senators, but has invoked the State primary election laws for making such party nominations of candidates, and the question is whether when a special primary election is called in a case like this, the controlling law requires the special primary nominations to be made in the *manner provided by the statute.*

The statutory "manner" of making primary party nominations of candidates for elective offices including United States Senators, is in general applicable to all primary elections and is not limited to the specific biennial primary elections designated in the statute. The word, "manner," as used in the statute, has relation to the means and method

of making party nominations of candidates for offices, and not to the number of, or to the times for holding, primary elections to nominate party candidates for office.

A nomination *under the provisions of the statute* is essential to a place on the general election ballot; and the *provisions of the statute* do not confine primary nominations to the specific biennial primary elections that are expressly required by the statute. All primary nominations of party candidates for elective offices must be made *under the provisions* of the statute, but not necessarily at the biennial primary elections fixed by the statute. The statute provides for the nomination of party candidates for elective offices by the appropriate executive committees when at the second primary election no candidate for nomination for an elective office receives a majority of the votes cast for the office, and also when a person nominated for office dies, resigns or is removed between the primary election and the ensuing general election and also when for any cause there is a vacancy in any nomination and no method is otherwise provided in the statute for filling such vacancy in nomination. Sec. 14, Chap. 13761, Acts of 1929; State v. Tyler, 100 Fla. 1112, 130 So. 731.

"A first primary election," not *the* first primary election, "shall be held on the first Tuesday after the first Monday in June," and "a second primary" election shall be held on the fourth Tuesday after the first Monday in June in every year in which a general election is held. Sec. 411 (354) C. G. L., as amended by Chap. 13761, Acts of 1929; Sec. 1934 and 1936 Supplements to C. G. L. Such biennial primary elections are mandatorily provided for; but the statute does not exclude other primary elections that may be appropriate to comply with the command of the statute that *all* party candidates including party candidates for United

States Senators, shall be made *in the manner* provided for in the statute *and not otherwise*.

Here the vacancies in office having occurred pending and not after the general primary election of 1936, the statute does not *expressly* authorize party nominations to be made by executive committees. And when there is no vacancy in a party *nomination,* but a vacancy in an elective *office,* including the office of United States Senator, occurs by the death of the incumbent before the regular primary election, but too late for a party candidate to fill the vacancy *to qualify* as a candidate in the regular primary election, and the office must be filled at the approaching general election, a party candidate for the office so to be filled at the coming general election, must be chosen in the manner provided by the statute. As the exceptional cases here are not expressly covered by the provisions of the statute as to party nominations of candidates by either primary elections or by executive committees, party candidates may be nominated by special primary elections called by the appropriate party executive committee, under the usual powers of the committee, there being no *express* provisions of the statute either permitting or forbidding such a primary election. Such an exercise of power by the executive committee elected under the statute, is consistent with the intendments of the statutory provisions controlling party nominations of candidates by primary elections, and complies with the statutory requirements that all party nominations shall be made in the manner provided by statute and not otherwise. When a primary election is called, it must be held in the manner provided by the statute, since the statute provides that all nominations of party candidates must be by primary elections or by executive committees, *in the manner provided by* the statute. Sec. 411 (354) C. G. L., as amended by Chap.

13761, Sec. 14, Acts of 1929; State, *ex rel.,* v. Mitchell, 118 Fla. 513, 159 So. 775. When Section 355 C. G. L. requires party candidates to be nominated *"in the manner provided"* by the statute, it means nomination by primary elections when they are commanded or properly called, or by appropriate executive committee when that method is allowed by the statute. Section 411 (354) C. G. L., as amended by Chapter 13761, Acts of 1929. State, *ex rel.,* v. Mitchell, 118 Fla. 513, 150 So. 775. In this case the party executive committee has called a primary election and it is necessary that, having been duly called, it must be conducted in the manner provided by the statute.

"Each committee and its officers shall have the powers usually exercised by such committees and by the officers thereof not inconsistent with the provisions of this Article." Sec. 361 (305) C. G. L.

Powers and duties implied by the purpose, terms and intent of a statute may be as potent and may be made as effective as powers and duties expressly or specifically provided by statute.

It is a contemplated power of a party executive committee elected under the statute, to take lawful steps to provide a party candidate for each elective office; and the calling by the appropriate party executive committee, of primary elections to provide party candidates that could not have been regularly provided for at the usual biennial primary elections, when such party candidates are not expressly required to be filled by executive committees, is not inconsistent with the statute, but it is in accord with the requirements and intent of the statute that all party candidates for elective offices, including United States Senators, shall be nominated in the *manner* provided for in the statute, and the initial manner provided is by primary elections. The primary

election statutes refer to general or regular primary elections, and to special primary elections. Party candidates may be chosen by executive committee nominations, instead of by primary elections where the *manner* of nominating by primary elections could not have been appropriately invoked, having reference to the dates of the general primary elections and the general election and other pertinent conditions. See State, *ex rel.,* v. Mitchell, 118 Fla. 513, 159 So. 775, or where the nomination of party candidates by executive committees is provided for or permitted by the statute. Sec. 411 (354) C. G. L., as amended by Chap. 13761.

Each candidate for a primary nomination to an elective office is required to pay a stated fee into the public treasury; but party assessments of candidates for party nominations are expressly forbidden *"in the event* of a special primary election." Sec. 381 (324) C. G. L. Thus special primary elections which are contingent upon the happening of events, are *expressly* contemplated by the statute; and all the provisions of the statute should be given their intended effect as parts of the statute and to effectuate controlling commands of organic law.

There is nothing in the statute that forbids or that is inconsistent with special primary elections; but on the contrary, special primary elections are consistent with the statutory *manner* of holding primary elections and with the requirements of controlling organic law; and consistent with the limited statutory executive committee nominations and with the powers usually exercised by party executive committees in providing party candidates for elective offices in any manner consistent with statute law. When special primary elections are invoked, they should be held as the statute provides and not otherwise, since all primary elec-

tions to nominate party candidates for office must be held in the manner provided by the statute and not otherwise.

The statutory authority and duties of the Secretary of State and other officers, with reference to the "manner" of holding primary elections are as applicable to special primary elections to nominate party candidates for offices commanded by law to be filled by election after due nomination, as such authority and duties are applicable to the regular biennial primary elections to nominate party candidates for elective offices.

If all nominations of party candidates for elective offices "shall be made in the manner provided in" the statute, and if the name of no person nominated by a party shall be placed on the official ballot at the general election unless such person shall have been nominated for office under the provisions of the statute, then all nominations of party candidates must be made by primary elections held under the statute or by the appropriate executive committees, which are the only means or manner of making party nominations "under the provisions of" the statute. The nomination of party candidates by primary elections is the general rule and such nominations by executive committees are special exceptions.

The statute expressly provides for a general biennial primary election for making nominations of candidates by all political parties, the names of which party nominees are to be placed upon the official ballots at the ensuing general election, Section 359 (303), 411 (354) C. G. L., Chapter 13761, Acts of 1929; and express provision is also made for making party nominations by the appropriate executive committee when there is a tie vote at the second primary election or when by reason of death or other cause there is a vacancy in a party *nomination* between the general pri-

mary and the general election. Sec. 411 (354) C. G. L., as amended in 1929.

No *express* statutory provision is made for making party nominations for elective offices that become vacant after the time for qualifying as candidates in a general biennial primary election has passed and before the primary election is completed; but the statute provides the manner of making nominations of party candidates by primary elections and such provisions are general and may be made applicable to special primary elections invoked to make party nominations of candidates for vacancies in offices that the law requires to be filled at the general election, when the vacancies in office occurred too late for candidates to qualify at the regular primary election and before the primary election is completed, absent any controlling provision of law to the contrary. The statute does not specifically provide for calling special primary elections, and does not expressly require party executive committees to call a special primary election; but special primary elections are not forbidden; but are contemplated by, and are not inconsistent with the provisions of the statute, and accord with the controlling intent and commands of dominant organic law for the election of United States Senators to fill vacancies that may "happen" in such offices; and an appropriate executive committee that has been elected under the statute, having general powers recognized by the statute, may call special primary elections in the absence of controlling law to the contrary.

As all party candidates whose names are to go upon the general election ballot must under the statute be nominated by primary elections or by party executive committees; and as the means and manner of holding statutory primary elections are as applicable to special as to general primary elec-

tions; and as the statute expressly provides that each party executive committee "shall have the powers usually exercised by such committee * * * not inconsistent with the provisions of" the statute; and as it is within the authority and duty of the appropriate party executive committee to provide for nominating party candidates as may be authorized by law; and as a special primary election to nominate party candidates for offices of United States Senators who could not have been nominated in the regular primary election and who must be elected at the coming general election, is not inconsistent with, but is in accord with, the statutes of the State, and the statutes must be interpreted to make effective controlling organic law; and as the statute contemplates that all primary elections shall be held in the manner provided by the statute, the calling by the proper party executive committee elected under the statute of a special primary election in such a case as this, to be held in the manner provided by the statute, to nominate party candidates for the offices of United States Senators to be voted for at the approaching general election, is not inconsistent with, but is in accord with, the purpose and intent of the statutes and the requirements of paramount organic law for the filling of vacancies in the offices of United States Senators. The duty of the Secretary of State to accept the oaths and filing fees duly tendered by candidates as alleged, is a part of the manner of conducting primary elections under the provisions of the primary election statutes, and the duty is required by law to be performed to effectuate the intent and purpose of the controlling law.

Express provisions of the primary election statute and amendments thereto, provide for party candidate nominations at the biennial primary elections, and also provide for executive committee nominations in stated contin-

gencies. The statute does not forbid, but by references to special primary elections and by the general express recognition of the usual powers of party executive committees which are preserved by the statute, and also by the necessary intendments of the statute to effectuate the expressed general organic and statutory purposes with reference to the nomination and election of officers, and particularly United States Senators, the statutes by necessary implication intend that special primary elections called by a party executive committee to nominate party candidates for the offices of United States Senators, should be conducted in the manner provided by the statute, there being no contrary provisions of Federal or State law.

Under Article XVII of the Federal Constitution, it is the duty of the State to provide for the election of United States Senators to fill vacancies as well as for new terms. Provisions for such elections have been made. See Secs. 456 (391), 457 (392), 251 (216), *et seq., C. G. L.* As the State laws require party nominations of candidates for election as United States Senators to be made in a prescribed manner by primary election or by party executive committee before the names of party candidates can be printed on the election ballots, Sec. 355 (299) C. G. L., it is the duty of the State to provide the means and manner for making such nominations; and such means and manner are provided by the express· and implied provisions and intendments of the primary election statute.

DAVIS, J., concurs.

BROWN, J. (concurring specially).—My view is that the Executive Committee not only had the power to call these special primaries, as they did do, but that it was their positive duty to do so. Under our statutory primary system, they did not, in my opinion, have any other alternative. This

would of course apply to the State Executive Committee of any other party which constitutes a political party in this State as defined by the statute.

The matter of holding party primaries under statutory regulations and at the expense of the State, or the county, as the case may be, is nothing new in Florida. It has been done right along ever since the Bryan primary law was adopted in 1913. That Act made party primaries a part of the election machinery of the State and strictly regulated them. That the Act, both as originally adopted and as since amended in some respects, applies to and regulates *special* as well as *general* primaries, seems clear to my mind. The question as to whether the statute applies to special primaries is novel in the sense that it has never been raised before. But that it does so apply is the logical and inevitable result of the language and plain intent of the statute, and our own previous decisions on related questions, as I understand them.

This is shown by the very first section of the Bryan primary law, now Section 355 C. G. L., which is still the law in this State, and reads as follows:

"355 (299). Nomination to be made in primary election. The nomination of all candidates for all elective State, Congressional and county offices, for United States Senator, and for the election of members of the State, Congressional and county executive committees, by all political parties as defined by this Article, shall be made *in the manner provided in this Article, and not otherwise.* (Italics supplied.)

"The name of no person nominated by a party required hereunder to make nominations of candidates shall be placed upon the official ballot to be voted at any general election as a candidate for any office, when provision is made herein for nominating candidates for such office, unless such

person shall have been nominated for such office under the provisions of this Article.(Ch. 6469, Acts 1913, 1.)"

Thus the broad purpose and comprehensive intent of the statute is emphatically expressed in its very first section. The title of the Act was "An Act to provide for and regulate Primary Elections." And special primaries are referred to several times in the Act, thus showing that the Legislature contemplated that special primary elections would, at times, have to be called, and it recognized the power of State and county party executive committees to call them providing that "Each committee and its officers shall have the powers usually exercised by such committees and by the officers thereof, not inconsistent with the provisions of this Act."

In a long line of cases, beginning with the case of Bailey v. Van Pelt, 78 Fla. 337, 82 So. 789, this Court has adopted and applied the following as one of the rules of statutory construction: "When authority is given by statute to accomplish a stated governmental purpose, there is also given by implication authority to do everything necessary to accomplish the purpose that is not a violation of law or public policy." This principle of statutory construction is very much the same as the rule for constitutional construction as expressed by Chief Justice MARSHALL in McCulloch v. Maryland, 17 U. S. 316, 4 L. Ed. 579:

"Let the end be legitimate, let it be within the scope of the Constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consistent with the letter and spirit of the Constitution, are constitutional."

The only express authority for a party executive committee to itself name the nominee is that conferred by Section 50 of the Bryan Act as later amended by Section 14 of the Act of 1929 (Chapter 13761). This section as

amended (appearing as Section 411 of the Compiled General Laws, 1936 Supplement) has been construed by this Court in two cases: State v. Tyler, 100 Fla. 1112, 130 So. 721, decided six years ago, and State v. Mitchell, 118 Fla. 513, 159 So. 775, decided about 18 months ago. In the Tyler case, this Court, among other things, said:

"If this Court should adopt the construction of Section 14 of Chap. 13761 contended for by relator, the effect would be to provide optional methods of selecting party nominees. There would then be at least two methods *under the primary law* of making original selections of party nominees, first by popular vote of the party at a primary election; second by the designation of such nominee by the party executive committee when the party elects to hold no primary or when no candidate for nomination offers himself in the primary. Under relator's construction, the failure of any political party to make party nominations by a primary election would create 'vacancies' as to all nominations, which might then be filled by the party executive committee and the object of the mandatory primary election law could thus be readily defeated. The holding of primary elections would become an idle act, since those political parties which did not choose to hold such elections might nevertheless designate party nominees.

"The general purpose of the Legislature in enacting mandatory primary laws was to preclude the making of nominations by convention, party committees and the like, and to require that the people themselves, by their direct votes, should name party nominees. The only vacancies contemplated by Sec. 14 of Chap. 13761, *supra,* to be filled by executive committees, are such as may occur after the people themselves have made nominations, and vacancies therein have occurred by death, resignation, or other incapacity.

Which might perhaps include forfeiture to be determined by resolution of the proper executive committee on proper and sufficient cause shown.

"The statutory provision now before us should not be interpreted so as to allow a political party to ignore the mandatory requirement to nominate candidates by primaries, and to substitute some other method of selecting original party nominees. * * *

"A 'vacancy in nomination' is to be distinguished from a failure or omission to nominate at the primaries. There can be no 'vacancy in a nomination' until there has first been a nomination. * * *

"We must construe the statutory language as we find it. Doing so, we hold that the phrase found in Sec. 14 of Chap. 13761, *supra,* 'or if for any cause there is a vacancy in any nomination,' does not authorize a party executive to make an original nomination. The authority of the party executive committee to nominate under that statute is contingent upon the prior primary nomination followed by a vacancy in that nomination. Where, as here, a primary has been held in which there were no candidates for nomination for the office in question, the condition of the statute has not been fulfilled, and the executive committee is without authority to act under the statute in question. No 'vacancy in any nomination' has occurred here. The situation is that there has been no nomination."

The case of State v. Mitchell, *supra,* dealt, like the present case, with a vacancy in office, as distinguished from a vacancy in nomination. In that case, we held that where a county officer died after the general primary and before the general election, a vacancy in office was created, and that the county executive committee of the party could name a party nominee whose name could properly be printed on

the official ballot in the ensuing general election. But in that case, when the executive committee acted on the matter, it was too late to call a special primary, and if the executive committee had not selected a nominee the party would have had to enter the general election without one. In the Mitchell case, among other things, it was said:

"But as a regularly constituted executive committee of the Democratic party vested with general authority concerning party affairs not covered or regulated by statute, nor restrained by party laws prescribed at a general party convention, said County Democratic Executive Committee was not without the inherent right as the Democratic Party's representative, to take appropriate official action looking toward the selection and certification of the name of a Democratic Party candidate to fill the vacancy in an office as to which the party was without power under the statutes to supply its usual nominee by means of a primary election in view of the fact that the date of the primary election for 1934 had already passed before the vacancy in the office occurred. This is so because any nomination at all to be effective in the premises had to make prior to the date of holding the general election of 1934, and where no specific provision of the statutes regulating the conduct of party primaries would thereby be violated, the County Democratic Executive Committee had authority to act. * * *

"The phrase 'provided that all committee nominations shall be made as provided by the laws governing primary election,' as used in Section 312 C. G. L., 256 R. G. S., as amended by Chapter 14657, Acts 1931, is not to be construed as an unconditional limitation upon the commonly recognized general right of an organized and recognized political party to select and certify its nominee for a 'vacancy in office' as distinguished from a 'vacancy in nomination' where

the vacancy in office and the nomination and certification of the committee transpires subsequent to the date of a primary election and prior to a general election, where no express or implied provision of law relating to and requiring nomination to be made only in primary elections is intended to be evaded, or is violated by so doing. On the contrary, the statutory language should be construed as if the phrase read, 'Provided, that all committee nominations shall be made as provided by the laws governing primary elections *where such laws are capable of being complied with under the circumstances of the particular case.'* * * *

"Where, however, by reason of the death of an elective officer during a term and after a primary has already been held in a general election year, but before the date of the ensuing general election, no nomination can be made according to the usual laws governing primary elections, the statutory *limitations* as to printing names on the general election ballot does not necessarily apply. Therefore the political parties themselves, or their official representative committees, may exercise their inherent party prerogative of selecting a candidate and certifying his name to be printed on the general election ballot, where no intendment of the primary election law is to be circumvented or violated by so doing." * * *

"The statutes of Florida recognize political party nominations as an integral feature of our election processes. For the two major parties *nominations are required to be made in primary elections and can be legally made in no other way when that method of nominating candidates is available.* Section 355 C. G. L., 299 R. G. S. The general purpose of our mandatory primary laws was to preclude nominations of candidates by conventions, party committees and the like, and to require nominations to be made by di-

rect vote of the people. State v. Tyler, 100 Fla. 1112, *supra."* (Italics in last paragraph supplied.)

Thus both the statutes and our previous decisions clearly indicate that nominations by legally regulated primaries are the rule and nominations by party committees are the exception, and that the plain purpose and intent of the statute is that nominations by party committees, in case of vacancies in office, such as we have here, should not, and cannot, be resorted to, when, as here, it is practically and physically possible to call and hold a primary election.

Thus in the Hawthorne case, 116 Fla. 608, 156 So. 619, this Court expressed the general rule, by using this language:

"Primary election laws are a part of the election machinery of this State, and are interwoven with the general election laws in such manner that candidates of certain major political parties rendered subject to the primary election laws can only be officially nominated, and have their names printed upon the general election ballots, by procuring their nomination in a primary election. State v. Gerow, 79 Fla. 804, 85 So. 144; State, *ex rel.* Harris, v. Belote, 106 Fla. 938, 143 So. 881; State, *ex rel.* Barnett, v. Gray, 107 Fla. 73, 144 So. 349; State, *ex rel.* Waite, v. Gray, 107 Fla. 109, 144 So. 356.

"So a primary election held under the primary election laws of this State may properly be said to be an 'election' within the purview of Section 26 of Article III of the Constitution requiring statutes to be enacted to preserve elections from undue influence exerted by 'Improper practices.' And this Court so holds."

These views are further supported by the language of that section of the General Election Laws, Sec. 312 Comp.

Gen. Laws, as amended by Chapter 15657 of the Acts of 1931, the relevant portion of which reads as follows:

"312 (256). Names to be printed on ballots, etc.—The Board of County Commissioners of each county shall cause to be printed on the ballots to be used in their respective counties, only the names of the candidates who have been put in nomination by primary election, or the appropriate executive committee, of any political party in this State, when the same have been certified and filed with them not more than sixty days nor less than twenty days previous to the day of election, which certificate shall contain the name of each person so nominated, and the office for which he is nominated, and shall be signed and sworn to by the members, or a majority thereof, of the appropriate canvassing board of primary elections, or, in case of a nomination by an executive committee by the chairman and secretary thereof: Provided, that all committee nominations shall be made as provided by the laws governing primary elections."

Section 381, Comp. Gen. Laws, authorizing party executive committee assessments upon candidates, contains an express proviso that no such assessments shall be made in the event of a "special" primary election. And Section 8140 C. G. L., making it a criminal offense for Inspectors of elections to refuse to allow watchers while ballots are being counted, is expressly made applicable to "all general and special elections and all regular or special primaries." So the Leigslature recognized the power of political parties to call special primaries, and the first section of the primary law, as we have seen, provided that the nomination of all candidates for State and county officers "shall be made in the manner provided in this Article." And of course the manner provided was by primary elections, except in those

unusual cases, such as a tie vote or a vacancy in nomination, in which the party executive committee was given authority to nominate.

Upon the oral argument of this case, which was very ably presented by counsel for both sides, considerable reference was made to the historical background of these various statutes relating to primary elections in this State, commencing with Chapter 5014, adopted in 1901, which historical background, to my mind, tends to support the views hereinabove expressed.

"The purpose of all rules or maxims as to the construction or interpretation of statutes is to discover the true intention of the law, they are useful only in cases of doubt, they are never to be used to create doubt, but only to remove it, and cannot be invoked to defeat or destroy natural justice or substantial equities. * * * For the purpose of construction resort may be had not only to the language and arrangement of the statute, but also to intention of the Legislature, the object to be secured, and to such extrinsic matters as the circumstances attending its passage, the sense in which it was understood by contemporaries, and its relation to other laws. * * * A rational, rather than an arbitrary, construction is to be accorded all statutes." 59 C. J. 943-4.

I concur in the conclusion reached, and in most of the reasoning advanced, in the able opinions of Mr. Chief Justice WHITFIELD and Mr. Justice DAVIS. The relators have, I think, shown a clear right to the issuance of the alternative writ of mandamus applied for.

BUFORD, J. (joining in the order awarding alternative writ of mandamus).—I am unable to agree with all that is said in the opinion by Mr. Chief Justice WHITFIELD or what is said in the opinion prepared by Mr. Justice DAVIS, or what is said in the opinion prepared by Mr. Justice BROWN.

I am convinced that we committed error in the construction of paragraph 3 of Sec. 14, Chapter 13,761, Acts of 1929, when we construed the language "for any cause there is a vacancy in any nomination" to apply only to cases where there had been a nomination in a General Primary and for some reason the nomination thereafter and prior to the General Election became vacant. See State, *ex rel.* Chamberlin, v. Tyler, 100 Fla. 1112, 130 Sou. 721; Moore v. Board of County Commissioners, Leon County, 96 Fla. 519, 118 Sou. 476; and State, *ex rel.* Summer, v. Mitchell, 118 Fla. 513, 159 Sou. 775.

I think that it was the legislative intent by the enactment of Chapter 13761 to provide for the nomination of party candidates under *all* conditions and the language in Section 14 of that chapter amending Section 354 R. G. S., 411 C. G. L.: "In the event of the death, resignation or removal of any person nominated for office in a primary election, between such primary election and the ensuing general election, or if for any cause there is a vacancy in any nomination and no method is otherwise provided herein for filling such vacancy, then and in that event the procedure shall be the same as is hereinbefore provided for the nomination of candidates in case no candidate receives a majority of the votes cast in the primary election and all such nominations shall have the same force and effect and shall entitle the nominees to all the rights and privileges that would accrue to them as if they had been nominated in the regular primary election," was intended to confer upon the respective governing committees the power to make a nomination of a party candidate to be voted for in the General Election whenever it shall appear that an elective Federal, State or county officer would be required to be elected in the ensuing Gen-

eral Election and no person had been nominated in the primary as the party candidate for that office.

My colleagues, however, do not agree with me in this regard and, therefore, the law is established contrary to the view which I now entertain and such view must yield to the construction of the statute as established by the enunciations in the cited opinions.

In State, *ex rel.* Summer, v. Mitchell, *supra,* it was held:

"Where, however, by reason of the death of an elective officer during a term and after a primary has already been held in a general election year, but before the date of the ensuing general election, *no nomination can be made according to the usual laws governing primary elections, the statutory limitations as to printing names on the general election ballot does not necessarily apply.* Therefore, the political parties themselves, or their official representative committees may exercise their inherent party prerogative of selecting a candidate and certifying his name to be printed on the general election ballot where no intendment of the primary election law is to be circumvented or violated by so doing. And under Chapter 14657, Acts 1931, *supra,* nominees so selected, being nominees in fact of a party entitled to make and certify nominations of candidates for printing in general election ballots, are entitled to have their names printed on the general election ballots as candidates 'Put in nomination' by the appropriate party executive committee despite the fact that they may not be entitled to claim title as nominees under the special statutory prerogatives of an official primary or committee nominee as the latter class of nominees is described in the terms of Section 14 of Chapter 13761, Acts 1929." (Emphasis supplied.)

And, further, in that opinion we said:

"But when there has been no candidate nominated as the result of a primary election *and it is clearly demonstrated that under no circumstances can there be a primary election nomination legally made, because of the occurrence of a vacancy in office subsequent to a primary and prior to the succeeding general election,* it cannot be said that the terms of Chapter 12038, *supra,* should be so strictly construed as to inhibit the exercise of a party's traditional powers to nominate a candidate according to its own rules and regulations and have that candidate accepted and recognized as such for the purpose of having his name printed on the ballot under that Act, although his status as a nominee under such circumstances is not that of one having an exclusive right to have his name appear printed on the ballots of the general election. This is necessarily the rule because we can find nothing in our system of primary eelction laws which was intended to forbid customary party activities in cases where the subject matter is neither expressly nor impliedly regulated by statutory provisions."

So it is that to hold that a special primary election may be called by the governing committee of a recognized political party and thereupon be required to be held under the law applicable to general primary elections is to positively overrule what was said as above quoted in the Mitchell case.

It must also necessarily follow that: "The State Democratic Executive Committee could have called one set of special primaries to be held for the nomination of one candidate for the United States Senate in September and another set of special primaries for the nomination of another candidate for the United States Senate in October, and the State Republican Executive Committee could have likewise called two sets of special primaries for the nomination of

two candidates for the United States Senate and the Secretary of State could be by mandamus coerced to function in regard to each of those four special primary elections in the manner in which he is sought to be coerced here, and then, if we happened to have some other political party which had shown sufficient voting strength to be recognized as a political party, such other political party through its State Executive Committee could call some additional Special Primaries to nominate its candidates and require same to be held at public expense." This conclusion was approved by Attorneys for the Relators at the bar of this Court.

Under the provisions of Chapter 6469, Acts of 1913, the several party committees are endowed with all the powers usually exercised by such committees. It must be conceded that the calling of a Special Primary election to nominate a party candidate for office was a power that had usually been exercised by such committee prior to the enactment of Chapter 6469, *supra,* and is within the inherent power of such committee unless such power is abrogated by statute. So we must now determine whether we will adhere to the enunciation contained in the Mitchell case hereinbefore quoted to the effect "that under no circumstances can there be a primary election nomination legally made because of the occurrence of a vacancy in office subsequent to a primary and prior to the succeeding general election," or, shall we overrule that holding and now hold that a State Executive Committee of a. recognized political party may call a special primary under such circumstances as here exist and upon such special primary election having been called by such committee it becomes the duty of the State and county officers to function in all respects in connection with such special primary election in the same manner and to

the same extent that they would function in connection with the holding and conducting of a general primary election specifically provided for in the statutes.

My view is that to hold the latter, and this we must do or not issue the writ, we must read and write into the statutes language which is not there either in terms or by implication. We must escape terming this "judicial legislation" by calling it "judicial interpretation" of the legal right of the State under existing statutes to regulate and police all primary elections, whether general or special, and whether held under the mandatory provisions of the statutes, or held pursuant to call therefor made by the governing committee of any political party recognized as such under the laws of this State and when made under conditions under which such Committees may lawfully call a special primary election to be held for the nomination of *its* candidates to be voted for in the general election.

The determination of the question does not involve the rights of life, liberty, property or the pursuit of happiness. It involves only the question of procedure as to how a party candidate may be nominated by the Democratic Party in Florida.

I am convinced that the usefulness of this Court, the respect in which it may be held and the confidence reposed in it by the people of the State, and the welfare of the State at large may be better served by my yielding some of my personal views in regard to the construction to be given existing statutes and joining with my colleagues who have approved the opinion which will mean ultimately the issuance of a peremptory writ of mandamus, unless the Secretary of State should make his return alleging compliance with the alternative writ, than by my adhering to my personal views and producing an equal division of the Court

and thereby obstructing the procedure which has been undertaken, and thrusting back on the shoulders of the State Democratic Executive Committee the duty of nominating candidates for the Democratic Party to be voted for for the offices of United States Senator in the ensuing general election.

Therefore, I join in the Order issuing alternative writ of mandamus.

TERRELL, J. (dissenting).—I find no authority for the State Democratic Executive Committee to call and hold a primary election to nominate candidates for United States Senator nor do I find any authority for paying the expense of holding such elections by the State. Such authority as there exists to nominate under the circumstances recited in the majority opinion is in the Committee. I think it may employ such reasonable means and instrumentalities in doing this as its judgment and discretion may dictate.

I am authorized to say that Mr. Justice ELLIS concurs in this view.