STATE, *ex rel.* O. O. SUMMER v. CHARLES A. MITCHELL.

159 So. 775.
Division A.
Opinion Filed February 28, 1935.

T. B. Ellis, Jr., for Relator;

Vocelle & Mitchell, for Respondent.

PER CURIAM.—This is a proceeding in quo warranto instituted on the private relation of the claimant to an elective county office, the Attorney General having refused to join in same.

Where a county officer was elected at the general election of 1932 for a four-year term of office and died on June 12, 1934, in the middle of his term after the holding of the June 6, 1934, primary, a vacancy in office as distinguished from a "vacancy in nomination" occurred by reason of the officer's death, within the purview of the following para-

graph of Section 411 C. G. L., 354 R. G. S., as amended by Section 14 of Chapter 13761, Acts 1929, relating to Primary Elections.

"In the event of the death, resignation or removal of any person nominated for office in a primary election, between such primary election and the ensuing general election, *or if for any cause there is a vacancy in nomination,* and no method is otherwise provided herein for filling such vacancy, then and in that event the procedure shall be the same as is hereinbefore provided for the nomination of candidates in case no candidate receives a majority of the votes cast in the primary election *and all such nomination shall have the force and effect and shall entitle the nominee to all rights and privileges that would accrue to them as if they had been nominated in the regular primary election."* (Emphasis supplied.)

See State, *ex rel.* Chamberlin v. Tyler, 100 Fla. 1112, 130 Sou. Rep. 721; Moore v. Board of County Commissioners Leon County, 96 Fla. 519, 118 Sou. Rep. 476.

Therefore the County Democratic Executive Committee of the county wherein there was simply a "vacancy in office" as distinguished from a "vacancy in nomination" to office was without *statutory* authority under Chapter 13761, *supra,* to select a nominee of the Democratic party and vest in such nominee so selected "all rights and privileges that would accrue to him as if he had been nominated in the regular primary election." Nor could the action of such committee vest in such candidate, and in him alone, the right to have his name, and his name only, printed on the general election ballots as the sole party nominee to the exclusion of all others in accordance with Section 312 C. G. L., 256 R. G. S., as amended by Chapter 14657, Acts 1931, and cognate statutes.

But as a regularly constituted executive committee of the Democratic party vested with general authority concerning party affairs not covered or regulated by statute, nor restrained by party laws prescribed at a general party convention, said County Democratic Executive Committee was not without the inherent right as the Democratic Party's representative, to take appropriate official action looking toward the selection and certification of the name of a Democratic Party candidate to fill the vacancy in an office as to which the party was without power under the statutes to supply its usual nominee by means of a primary election in view of the fact that the date of the primary election for 1934 had already passed before the vacancy in the office occurred. This is so because any nomination at all to be effective in the premises had to be made prior to the date of holding the general election of 1934, and where no specific provision of the statutes regulating the conduct of party primaries would thereby be violated the County Democratic Executive Committee had authority to act.

Under Section 312 C. G. L., *supra,* as amended by Chapter 14657, Acts 1931, persons who may have been lawfully nominated but nominated outside the regular course of the primary laws, become such party's nominee *ex necessitate rei* and as such are properly held to have been regularly "put in nomination" by the appropriate Executive Committee within the intent and purview of that section. As regular party nominees such candidates are entitled to have their names printed on the general election ballots as duly nominated party candidates. Yet such nominees are not to be considered as party nominees within the meaning of Chapter 13761, Acts 1929, nor as being vested with the additional high prerogatives of primary nominees or commit-

tee nominees falling within the purview of Section 14 of said Chapter 13761 hereinbefore quoted.

The reason for the distinction between the two is that nominees under Chapter 13761, *supra,* are officially selected nominees whose rights as nominees accrue to them under, and are secured by reason of, a method of selection provided for expressly by the laws of the State. Nominees not so nominated under Chapter 13761, *supra,* are authorized, but unofficially designated, nominees in fact whose status as nominees is derived solely from the exercise of those internal and inherent party powers created and enjoyed by the nominating party as such, and not according to the provision of, nor within the privileges to be found set forth in, any State statute.

The phrase "provided, that all committee nominations shall be made as provided by the laws governing primary elections," as used in Section 312 C. G. L., 256 R. G. S., as amended by Chapter 14657, Acts 1931, is not to be construed as an unconditional limitation upon the commonly recognized general right of an organized and recognized political party to select and certify its nominee for a "vacancy in office" as distinguished from a "vacancy in nomination" where the vacancy in office and the nomination and certification of the committee transpires subsequent to the date of a primary election and prior to a general election, where no express or implied provision of law relating to and requiring nomination to be made only in primary elections is intended to be evaded, or is violated by so doing. On the contrary, the statutory language should be construed as if the phrase read, "Provided, that all committee nominations shall be made as provided by the laws governing primary elections *where such laws are capable of being complied with under the circumstances of the particular case."*

The purpose of the 1931 statute was to limit the total number of names that might be lawfully printed on general election ballots and was to confine such names to those of candidates nominated as a result of primary elections alone, unless proposed as executive committee candidates nominated in substitution thereof pursuant to Section 14 of Chapter 13761, Acts 1929, by party executive committees. See State, *ex rel.* Barnett v. Gray, 107 Fla. 73, 144 Sou. Rep. 349. The limitation is clear where the statutory primary procedure was capable of being followed in the selection of the certified names as nominees of a party subject to the primary laws, but which party ignored such primary laws as a nominating medium. State, *ex rel.* Chamberlin v. Tyler, 100 Fla. 1112, *supra.*

Where, however, by reason of the death of an elective officer during a term and after a primary has already been held in a general election year, but before the date of the ensuing general election, no nomination can be made according to the usual laws governing primary elections, the statutory *limitations* as to printing names on the general election ballot does not necessarily apply. Therefore the political parties themselves, or their official representative committees, may exercise their inherent party prerogative of selecting a candidate and certifying his name to be printed on the general election ballot, where no intendment of the primary election law is to be circumvented or violated by so doing. And under Chapter 14657, Acts 1931, *supra,* nominees so selected, being nominees in fact of a party entitled to make and certify nominations of candidates for printing in general election ballots, are entitled to have their names printed on the general election ballots as candidates "put in nomination" by the appropriate party executive committee despite the fact that they may not be entitled

to claim title as nominees under the special statutory prerogatives of an official primary or committee nominee as the latter class of nominees is described in the terms of Section 14 of Chapter 13761, Acts 1929.

As to the importance of parties in American Democracy, see 1 Bryce Modern Democracies, Chapter XI, where it is stated that nominations proposed by established political parties are to be regarded as a part of our governmental system, because the practice of making party nominations is as old as democracy itself, and has now become an almost indispensable feature of our constitutional elective systems, state and national. The statutes of Florida recognize political party nominations as an integral feature of our election processes. For the two major parties nominations are required to be made in primary elections and can be legally made in no other way when that method of nominating candidates is available. Section 355 C. G. L., 299 R. G. S. The general purpose of our mandatory primary laws was to preclude nominations of candidates by conventions, party committees and the like, and to require nominations to be made by direct vote of the people. State v. Tyler, 100 Fla. 1112, *supra*. Therefore when a candidate has been duly nominated in a primary election, or the party committee has made a substituted nomination for a primary nomination, under the circumstances set forth in Chapter 13761, *supra*, no opposing candidate not so nominated can legally have his name printed on the general election ballot under Section 312 C. G. L. (Chapter 12038, Acts 1931) as construed by this Court in State v. Gray, 114 Sou. Rep 349, *supra*.

But when there has been no candidate nominated as the result of a primary election, and it is clearly demonstrated that under no circumstances can there be a primary election

nomination legally made, because of the occurrence of a vacancy in office subsequent to a primary and prior to the succeeding general election, it cannot be said that the terms of Chapter 12038, *supra,* should be so strictly construed as to inhibit the exercise of a party's traditional powers to nominate a candidate according to its own rules and regulations and have that candidate accepted and recognized as such for the purpose of having his name printed on the ballot under that Act, although his status as a nominee under such circumstances is not that of one having an exclusive right to have his name appear printed on the ballots of the general election. This is necessarily the rule because we can find nothing in our system of primary election laws which was intended to forbid customary party activities in cases where the subject matter is neither expressly nor impliedly regulated by statutory provisions.

It appears from the pleadings in this case, and is not denied, that the respondent Charles A. Mitchell was duly nominated as a candidate for the office of County Prosecuting Attorney which office had become vacant subsequent to the primary election of June 5th, 1934, and prior to the general election of November 6th, 1934, to fill a vacancy in the office that did not occur in time to have any candidate nominated for the unexpired term at the primary elections of that year, the term of the office extending to January, 1937. He was therefore entitled to have his name certified to the Board of County Commissioners and printed on the general election ballot as one who had "been put in nomination * * * by the appropriate executive committee" of the Democratic Party of Indian River County, despite the fact that he was not entitled to be recognized as a nominee of the Democratic Party insofar as Chapter 13761, Acts of 1929, Section 14, is concerned.

So Chapter 14657, *supra,* providing that the County Commissioners shall cause to be printed on the general election ballots only the names of candidates who have been put in nomination by primary election or by party executive committee as a substitute for a vacancy in nomination by primary election, does not forbid the County Commissioners to print on the general election ballots at the petition and instance of a recognized political party of this State, a candidate duly nominated by such party for a vacancy in office that could not have been legally filled at a primary election because occurring too late to be voted on therein, said chapter being negative in character and the prohibition not extending to such situation.

The rule *nisi* in quo warranto is discharged and the proceeding dismissed.

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur.

ELLIS, P. J., and TERRELL and BUFORD, J. J., concur in the opinion and judgment.