## Watson v. Witkin et al.

*David J. Smyth* and *Marshall H. Morgan*, for plaintiff.

*Harry Shapiro*, *Richardson Dilworth*, and *William T. Connor*, for defendants.

CRUMLISH, J., September 15, 1941.—

I. This is a taxpayer's bill against the county commissioners constituting the County Board of Elections

of Philadelphia, the Treasurer and Controller of Philadelphia, and the County of Philadelphia, praying that the election board be enjoined from arranging and preparing for an election for the office of mayor in the City of Philadelphia at the municipal election to be held November 4, 1941, and from permitting the nomination of candidates for said election, and that the other defendants be enjoined from expending or causing to be expended public funds for the purpose of said election.

The executive committee of the Democratic Party of the City and County of Philadelphia petitioned for leave to intervene. Hearing on said application having been held in open court, after notice to all parties, and there being no opposition to the application, leave to intervene as a defendant and file an answer and take all other steps and measures was granted.

Two of the original defendants, James C. Clark and John J. Hennessey, county commissioners and members of the County Board of Elections of Philadelphia, sought and obtained leave to be represented by special counsel of their own choosing, with the right to file an answer to plaintiff's complaints and to take all the other steps and measures as defendants.

Three of the original defendants, Morton Witkin, James C. Clark, and John J. Hennessey, county commissioners, constituting the County Board of Elections of Philadelphia, by Witkin, filed an answer in which it is alleged, inter alia, that two members of the said board had declared their intention to prepare and arrange for and cause to be held the election to fill the vacancy in the office of mayor in the City of Philadelphia at the municipal election to be held November 4, 1941, and submitted that the question as to whether the holding and conducting of such an election is legal is one which is for this court to determine.

Defendants, Luther A. Harr, treasurer, etc., Robert C. White, controller, etc., and the Democratic executive committee, have filed separate and responsive answers,

denying the allegations contained in the bill, and adding new matter in which they pray that the board of elections be ordered to take the necessary and proper measures for the holding of a special election for the office of mayor for the City of Philadelphia at the time of the municipal election to be held on November 4, 1941.

Defendants, James C. Clark and John J. Hennessey, county commissioners, etc., have filed a joint responsive answer in which they pray that the bill be dismissed and the county board of elections be directed to conduct an election for the office of mayor, at the forthcoming municipal election, and receive nominations for such office from the respective political parties in the City and County of Philadelphia, in accordance with their respective rules, and to place the names of such candidates for the office of mayor upon the official ballot or voting machines containing the names for all other offices.

Plaintiff has filed replications to the new matter contained in the answers filed by defendants, Harr, treasurer, etc., White, controller, etc., and the intervening defendant, the Democratic executive committee.

At the bar of the court, counsel for all parties stipulated that the matter was to be heard on the pleadings; waived their right to raise questions of jurisdiction and procedure and to file requests for findings of fact and conclusions of law; agreed that the decree entered should be a final one and waived the right to file exceptions thereto; and, in lieu thereof, further agreed that an appeal, if any, therefrom should be considered as exceptions taken and dismissed by this court.

II. The very interesting and important questions here presented arise as the result of the untimely and lamentable death of Mayor Robert E. Lamberton, who departed this life on August 22, 1941.

Mayor Lamberton had been elected Mayor of the City of Philadelphia for a term of four years, com-

mencing on the first Monday of January 1940. By virtue of the authority contained in section 4 of the Philadelphia City Charter Act of June 25, 1919, P. L. 581, as last amended by the Act of March 7, 1939, P. L. 7, 53 PS §2925, supplement, commonly referred to as the City Charter Act, Bernard Samuel, president of Council of the City of Philadelphia, has been acting as mayor of the said city since the commencement of the said vacancy. Mayor Lamberton's death occurred 18 days before the subsequent primary election, which took place on September 9, 1941. No arrangements were made for the nomination of candidates to fill the vacancy in the office of mayor at this primary.

Plaintiff herein seeks to enjoin defendants from arranging for, or causing to be held, an election for the office of mayor in the City of Philadelphia at the municipal election to be held on November 4, 1941, and further from permitting the nomination of candidates for such election.

The learned counsel for plaintiff argues in support of the bill:

1. That the holding of a primary election in accordance with the Pennsylvania Election Code of June 3, 1937, P. L. 1333, 25 PS §2600 et seq., at which time various political parties will nominate candidates for the office of mayor, is a necessary prerequisite to the holding of an election to fill the vacancy in the office of mayor as provided for by the City Charter Act of 1919, supra, sec. 4(a) ;

2. Although the Act of 1919, supra, provides for the election of a mayor the legislature has failed to provide the method of conducting such an election, and, therefore, Mr. Samuel, who has assumed the duties of the office of mayor, must continue in this capacity until his successor is regularly elected. That is to say, the successor must be nominated at a primary election in an odd-numbered year, a year during which a municipal election must be held under the Constitution,

and elected to office at the succeeding municipal election. To put the position clearly, Mr. Samuel must continue to act as mayor until the first Monday of January 1944, or during the balance of the term for which Mayor Lamberton was elected by the people.

3. That section 4(a) of the Act of 1919, being inconsistent with the Pennsylvania Election Code of 1937, has been repealed by the latter.

Defendants, the county commissioners constituting the county board of elections, are not in accord and consequently present two different positions.

The commissioners, by their legally authorized counsel, submit to this court the question as to whether the holding and conducting of an election to fill the vacancy in the office of mayor at the municipal election to be held November 4, 1941, is legal. However, counsel argues that section 913(d) of the Pennsylvania Election Code requires all nomination petitions to be filed at least 50 days prior to the primary and, the death of the mayor having occurred on August 22, 1941, it was impossible to comply with this requirement in time for the primary election of September 9, 1941. And he further argues, since no primary election for the nomination of candidates for the office has been held and as statutory law makes no provision for conducting a special election to fill the office of mayor at a municipal election, the president of council must continue to discharge the duties of mayor until such time as his successor is elected in accordance with this theory, i. e., by the filing of nomination petitions in due time, and by the holding of a primary and general election in an odd-numbered year, which would result in Mr. Samuel's holding office until the end of the term for which Mayor Lamberton was elected.

On the other hand, defendants Clark and Hennessey, county commissioners, by counsel of their own choosing, contend that it is the duty of the county board of elections to give effect to section 4(a) of the Act of

1919, supra, and to provide for and to conduct an election to fill the vacancy in the office of mayor at the next municipal election, which is to be held on November 4, 1941. They further contend that neither the Pennsylvania Election Code of 1937, nor any other law of this Commonwealth, prohibits the holding of such an election. It is argued in support of this position that the Act of 1919, supra, is the organic law of the City of Philadelphia, subject only to the power of the legislature to alter, amend, or even to destroy, and that the Pennsylvania Election Code is mere procedural law which cannot be held in any sense to curtail the plain intent of the Act of 1919, i. e., to elect the successor to the mayor "at the next election occurring more than thirty days after the commencement of such vacancy"; that accordingly, the successor to the mayor must be elected at the next municipal election, and if the legislature has not provided a method for nominating candidates for such an election then the said nominations should and must be made by the respective political parties in the City and County of Philadelphia in accordance with their respective rules.

The treasurer, the controller, and the Democratic executive committee may be said to be in accord with the position taken by defendants Clark and Hennessey.

III. The questions involved may be stated as follows:

A. Where, by reason of the death of the mayor of the City of Philadelphia in the second year of his term,

1. The president of city council assumes the duties of that office, by authority of the Act of 1919, supra, sec. 4, which provides, inter alia:

"(a) When a vacancy shall take place in the office of mayor, a successor shall be elected for the unexpired term at the next election occurring more than thirty days after the commencement of such vacancy, unless such election should occur in the last year of said term, in which case a mayor shall be chosen by the council by a majority vote of all the members elected thereto.

"(b) Until the vacancy is filled, or in case of the

mayor's temporary disability, the president of the council shall act as mayor; or if he should resign or be unable to act, then the chairman of the finance committee of the council shall act as mayor"; and

2. Another act of assembly (Pennsylvania Election Code of 1937, supra, sec. 902) provides, inter alia:

"All candidates of political parties . . . for the offices of United States Senator, Representative in Congress and for all other elective public offices within this State . . . shall be nominated . . . at primaries held in accordance with the provisions of this act and in no other manner"; and

3. It appears that the mayor's death was within 18 days of the subsequent primary election and the political parties nominated no candidates for the office of mayor at said primary election; and,

4. It further appears that there are no statutory provisions for the holding of a special election to fill said vacancy.

Is the president of council to continue to act as mayor for the balance of the term for which the mayor was elected, or has a vacancy in that office occurred which requires that the mayor's successor be elected by a vote of the people at the next municipal election?

B. In the latter event, what action, if any, shall be taken by the county board of elections on the subject of ballots or other means of expression of choice by the voters?

IV. All the parties who argue against an election to fill the vacancy as stated in the first question hold that the Pennsylvania Election Code of 1937 requires a primary for all elections. A careful reading of the Election Code readily discloses that the pertinent sections thereof deal with the nomination of candidates at primaries preceding a general or municipal election and not with the situation where a vacancy occurs in office. There are also specific provisions for substitution in case of vacancies caused by the death or withdrawal of

candidates nominated by political parties at primaries or by political bodies by means of nomination papers. The Election Code further places a time limit on the right to file nomination certificates in such cases. However, except for the provisions regarding special elections whenever a vacancy shall occur (*a*) in the office of United States Senator, (*b*) in the office of Representative in Congress, and (*c*) in either house of the General Assembly, and regarding nominations by political parties or bodies in situations (*b*) and (*c*), the Election Code is silent on the subject of filling vacancies in office as distinguished from vacancies in nominations. It is therefore apparent that the legislature considered three aspects: (1) Primaries preceding usual general or municipal elections; (2) filling vacancies in nominations; and (3) holding special elections to fill vacancies in the office of United States Senator, Representative in Congress, and in either house of the General Assembly. It treated each differently. In the first classification it provided for a primary and in the last two it did not. In this connection, it is significant to note that when the legislature considered the problem of filling vacancies in nominations in the above enumerated offices it disregarded the requirements of a primary; it affirmatively provided for nominations in accordance with party rules or by means of nomination certificates. It is clear, therefore, that the legislature did not intend a primary as a prerequisite to all nominations, or even an election, and this becomes more apparent when you consider that section of the Pennsylvania Election Code which regulates the form of ballot in general and municipal elections: Art. X, sec. 1003, 25 PS §2963.

It is a fundamental principle of law that a voter shall be allowed to vote for any person whom he chooses, and the fact that such person is not nominated by any political party or political body cannot deprive the voter of his vote: DeWalt et al. v. Bartley et al. (No. 2), 146 Pa. 529.

Nor are we impressed with the argument that clause (*a*) of section 4 of the Act of 1919, supra, is inconsistent with the Election Code and has been repealed to the extent of the inconsistency by the Election Code, which, under section 1901, 25 PS §3591, provides:

"All other acts of Assembly and parts of acts, general, special and local, in conflict or inconsistent with this act, or any part hereof, are hereby repealed, in so far as they are in conflict or inconsistent herewith."

In this connection, we call attention to the fact that the Election Code expressly enumerated the acts which were intended to be repealed thereby and made no mention of the Act of 1919. Moreover, the legislature, as late as 1939, dealt with the Election Code in four instances (Act of May 17, 1939, P. L. 166, Act of June 15, 1939, P. L. 376, Act of June 19, 1939, P. L. 449, and Act of June 19, 1939, P. L. 450) and also amended section 4(*b*) of the Act of 1919, supra, 53 PS §2925, supplement, which should be read in conjunction with 4(*a*). It is, therefore, quite apparent, aside from other applicable rules of construction, that the legislature neither expressly nor impliedly intended to repeal section 4(*a*) of the Act of 1919.

Furthermore, as has been pointed out by the learned counsel for the county commissioners, defendants Clark and Hennessey, the City Charter Act of 1919 is organic and substantive, establishing a right to vote for the mayor's successor, while the Election Code is merely procedural, setting up machinery for the conducting of general, municipal, primary, and special elections and representing the consolidation and codification of earlier laws. See 1 Dillon on Municipal Corporations, sec. 235, p. 446 (1911), and 1 McQuillin on Municipal Corporations, sec. 356, p. 967 (1940).

As a necessary concomitant to the proposition that a primary is a prerequisite to the election of a successor to the mayor, it is urged that such primary cannot take place next year, as the law provides for municipal elec-

tions in odd-numbered years, and therefore the president of council must act as mayor until the termination of the term for which the original incumbent was elected. In other words, it is argued that the phrase in section 4(a) of the Act of 1919 "at the next election" means the municipal election of 1943, preceded by a primary in that year. This position is untenable: Commonwealth ex rel. Roney v. Warwick, 172 Pa. 140 (1895). According to the report of that case, the Act of April 18, 1867, P. L. 1299, declared that the words "the next city election" in the Act of February 2, 1854, P. L. 44, sec. 46, should be construed to mean the election at which the qualified voters would, in accordance with existing laws, elect a successor in office had not a vacancy occurred therein. The receiver of taxes of the City of Philadelphia, who had been elected for a term of three years commencing the first Monday of April 1893, died on January 5, 1895. On January 9, 1895, the select and common councils elected Roney, the relator, to fill the vacancy for the unexpired term and he qualified. Shortly afterwards, on February 19, 1895, the relator was elected receiver of taxes for the full term of three years beginning the first Monday of April 1895. The question then arose as to whether or not relator was the incumbent for the unexpired term or whether he could qualify for the term for which he had been elected. In holding that the legislature cannot pass an expository act to compel the courts for the future to adopt a particular construction of a previously enacted statute, it was held (p. 146) :

"The practical effect of the act of 1867 in the present case would be to compel this court to 'construe' the expression, 'the next city election,' used in the act of 1854, to mean not the 'next' but the 'next but one'. It was clearly beyond the legislative power to thus usurp judicial functions, or to distort language."

It, therefore, necessarily follows that, if the legislature were without power to interpret an expression of

time limitation used in an earlier act, we are without power to interpret the expression "at the next election" in the Act of 1919 to mean an election to be held two years hence.

In Hamilton et al. v. Raub, etc., 131 Kan. 392, 292 Pac. 396 (1930), one Cole, while a county commissioner, who had been elected for the term of four years beginning the second Monday of January 1929, died on August 14, 1930. Thereafter, the vacancy was filled by appointment. At the primary held August 5, 1930, no name appeared on the primary ballot as a candidate for this office, no votes were cast for the nomination of anyone for that office, and no nomination for the office was then made. On August 28, 1930, plaintiff and fellow-members of the Republican "county central committee" met and nominated one Tandy. Tandy's certificate of nomination was filed with the county clerk who, on advice of the Attorney General, announced that he would not place the nominee's name on the ballot. The first question there presented to the court, similar to the one here under consideration, was: First, when was the election to be held to fill the unexpired official term of office of Cole, deceased? Was it to be at the November 1930 election or the November election 1932? It was there held that the appointee held office only until the next general election and that, the incumbent having died after the August primary, the election to fill the vacancy was not postponed for two years beyond the following November general election. See also State ex rel. Summer v. Mitchell, 118 Fla. 513, 159 So. 775 (1935). In that case a county officer died in the middle of a four-year term after the primary election for other county officers had been held. It was there held that where a "vacancy in this office", as distinguished from a "vacancy in nomination", occurred, selection of nominees for the vacancy in office was not governed by the statute which governed selections where there was a "vacancy in nomination". Cf. State ex rel.

Rummens v. Superior Court of King County, 160 Wash. 520, 295 Pac. 730 (1931).

The question under consideration also involves the doctrine of public policy. See In re MacAdams v. Cohen et al., 236 App. Div. 361, 365 (1932), affirmed 260 N. Y. 559 (1932), and Cavalcante v. O'Hara, 36 D. & C. 139 (1939).

In In re MacAdams v. Cohen et al., supra, which arose as the result of the resignation of Mayor Walker and the assumption of the duties of that office by McKee, president of the board of aldermen, under section 23 of the Greater New York Charter it was provided:

"Whenever there shall be a vacancy in the office of mayor, or whenever, by reason of sickness or absence from the city, the mayor shall be prevented from attending to the duties of his office, the president of the board of aldermen shall act as mayor, and possess all the rights and powers of mayor during such disability or absence. In case of a vacancy he shall so act until noon of the first day of January succeeding the election at which the mayor's successor shall be chosen."

Walker had been elected on November 5, 1929, for a four-year term from January 1, 1930, to December 31, 1933. It was contended that McKee, upon the resignation of Walker on September 1, 1932, succeeded to all the rights and duties of the office of mayor until his successor was chosen as provided for by the Greater New York Charter, and that, under its express terms, a successor was not to be chosen until the general municipal election of 1933, or until the full unexpired term, for which Walker had been elected, ended. Although the facts were similar, the case is distinguishable in law because the opinion, which was affirmed on appeal, was based in the main upon the interpretation of local statutes, but it is important to note that the factor most strongly impelling the court to hold an immediate election necessary was that "public policy,

generally speaking, requires that a vacancy in an elective office be filled as soon as possible by the electorate".

In Cavalcante v. O'Hara, supra, the matter came before the Common Pleas Court of Dauphin County on an application for a writ of mandamus to the Secretary of the Commonwealth. Petitioner presented his nomination as a candidate of the Democratic Party for the office of judge of his county, and the secretary refused to receive it on the ground that this office was not designated in the written notice sent by the secretary of the county board of elections as an office for which candidates were to be nominated at the primary election. In a thorough and well-considered opinion in which the court awarded a mandamus directed to the Secretary of the Commonwealth to receive the nomination petition of petitioner, it was said (p. 146):

"The second well-recognized proposition is that it is the general policy of the law that vacancies in elective offices should be filled at an election as soon as practicable after the vacancy occurs, and that appointments to fill vacancies should be effective only until the people may elect: State ex rel. v. Board of Commissioners of Lyman County et al., 34 S. D. 256, 145 N. W. 548; State ex rel. v. Moore et al., 49 Ariz. 51, 64 P. (2d) 809. This principle is also announced in some of our Pennsylvania cases, and time does not permit for the search of them, but since our Constitution itself declares the principle cases are not necessary."

Accordingly, we reach the conclusion that the statutes and public policy require that we answer the first question by holding that an election to fill the vacancy in the office of Mayor of the City of Philadelphia must be held on November 4th next. The impelling factor motivating us in so concluding and deciding that an election must be held on November 4, 1941, to fill the mayoral vacancy is the mandatory language of the Philadelphia City Charter Act of 1919, supra. In terms clear, explicit and unequivocal, it directs that

upon the occurrence of a vacancy in the office of mayor ". . . a successor shall be elected . . . at the next election . . ." The Pennsylvania Election Code of June 3, 1937, P. L. 1333, a procedural formula for the conducting of elections, does not in any way affect the mandate of this substantive provision. The sections of the Election Code cited to us as conflicting deal with the question of nominations, not elections. Section 902, it is argued, requires nomination by primary and in no other manner; however, in other sections of the code, the legislature specifically dealt with a phase of the problem before us, i. e., nomination of candidates for special elections to fill vacancies. There is no provision here for nomination for candidates in the event of a vacancy in the office of mayor. This is unfortunate; but, on the other hand, it is not fatal. It is not, because the charter of 1919 specifically states what is to be done; the president of city council is to perform the duties of the office until a successor shall be elected to fill the unexpired term *at the next election.* That the legislature has not provided machinery for the nomination of candidates for the office, however inconvenient, cannot have the force and effect of negating the salutary charter requirement that the vacancy in the office be filled at the next election.

V. We now come to the second question: What action, if any, shall be taken by the county board of elections on the subject of ballots or other means of expression of choice by the voters? In other words, what machinery, if any, may be set up for conducting an election to fill the office of mayor at the forthcoming municipal election?

It is argued that the legislature has provided no regulations for the holding of such an election and that for us to do so would be to enter the prohibited field of judicial legislation. With this proposition we are not entirely in accord. True, the legislature has set up no specific machinery, but an examination of the authorities discloses that it is not necessary for us to pioneer

in setting up the machinery. Ample authorities pave our path.

In Clay's Nomination, 2 Dist. R. 19 (1892) (C. P. No. 4, Philadelphia County), which dealt with the question of filling a vacancy in the Old Select Council of Philadelphia, the incumbent having died 21 days before the general election, petitioner was duly nominated by the regularly-convened delegates of the Republican Party as their candidate to fill the vacancy. The county commissioners declined to print his name on the ballot to be used at the general election on the ground that his certificate of nomination had not been deposited with them within the time then required by law. In holding that the certificate should be accepted and petitioner's name printed on the ballot, Thayer, P. J., said (pp. 20, 21):

"The legislature has thus taken care, it is obvious, to prevent the disfranchisement of the electors by reason of the death or withdrawal of candidates *after their nomination*, even up to the very eve of the election—in the language of the Act, 'at any time before the day of election,' and even 'after the ballots have been printed,' and have provided for furnishing the voters in such a contingency with what are popularly called 'stickers,' to enable them to vote for candidates regularly nominated, even at the eleventh hour. Was it their intention to exclude nominees from the ticket who are nominated to fill vacancies occurring less than forty-two days before the election, while they have provided for putting upon the ticket candidates substituted for deceased or withdrawing nominees 'at any time before the day of election?' It would be absurd to suppose so. It is quite clear to us that the case presented by the petitioners in the present proceeding is a *casus omissus*—a contingency overlooked when the law was framed. They provided for the substitution at any time of new nominees in the room of nominees who have died or withdrawn. They neglected to provide for the case of a nomination

regularly made within the forty-two days previous to the election. Of course, when the nomination is made more than forty-two days before the election the certificate must be filed with the county commissioners within the prescribed period of forty-two days, but to hold that where a vacancy occurs within the forty-two days no nomination can be made while provision is made for nominations 'at any time before the day of election,' in the case of the death or withdrawal of nominees, would be to attribute to the legislature an intention to establish a distinction wholly devoid of reason and highly detrimental in its effects. To give such a construction to the Act would be to stick in the bark, to attribute to the authors of this law a gross inconsistency, and to render the Act of May 20, 1864, which has never been repealed, entirely nugatory and void, a result which we feel quite satisfied was never intended by the legislature."

In Winston v. Moore, 244 Pa. 447 (1914), which was an attack upon the constitutionality of the Nonpartisan Ballot Law of July 24, 1913, P. L. 1001, it was urged, inter alia, that the abolition of party nominations for the office of judge was an unconstitutional restriction. In dealing with this subject, the Supreme Court, speaking through Elkin, J., stated (pp. 458, 459) :

"There is no provision of the Constitution which requires a party nomination for the office of judge. It is likewise true that there is no provision denying the right to make party nominations. The organic law is silent on the subject, and, hence, the legislature necessarily has a very wide discretion in such matters. Party nominations have in some instances been authorized by statute, and in the absence of statutory law, the courts have recognized and sanctioned the authority of political parties to make such nominations, not because the Constitution so requires, but as the most effective means of securing unity of political action. This is not a constitutional right, but rather a political privilege,

depending upon the will of the people, as expressed through their representatives in the legislature, or in the absence of positive statutory law, upon the will of party adherents, expressed through conventions, or caucuses, or otherwise, in accordance with the rules and regulations of political organizations. *This is another way of saying that matters of this character are clearly within the exercise of legislative power, but if the legislature does not choose to act, then within the rights of political parties properly and lawfully exercised.*" (Italics supplied.)

The Winston case is cited in a number of other jurisdictions and therefore entitled to great consideration: Miller v. Childs, 28 Calif. App. 478, 152 Pac. 972 (1915) ; Turner v. Fogg et al., 39 Nev. 406, 159 Pac. 56 (1916) ; State ex rel. Onstine v. Bartlett et al., 131 Wash. 546, 230 Pac. 636 (1924) ; People ex rel. Kell v. Kramer, 328 Ill. 512, 160 N. E. 60 (1928) ; Anderson v. Milliken, etc., 186 Wash. 602 (1936).

In People ex rel. Kell v. Kramer, supra, it was stated at pages 518, 519:

"Political parties were organized and in existence prior to the enactment of any statutory regulation thereof. The right of political parties to make nominations is not a right enumerated in the constitution but is a political privilege which may be regulated by the legislature, and in the absence of such regulation is exercised in accordance with the will of members of the political party concerned, as that will is expressed through the rules, customs, conventions or caucuses of such political organization."

See also State ex rel. Mills v. Stewart, etc., 64 Mont. 453, 210 Pac. 465 (1922), where it was stated, at page 460, that "In the absence of legislative enactment, a political party is governed by its own usages and establishes its own rules."

A late authority in point on this subject is State ex rel. Summer v. Mitchell, supra, where the Supreme

Court of Florida, in a per curiam opinion, stated (p. 518):

"Where, however, by reason of the death of an elective officer during a term and after a primary has already been held in a general election year, but before the date of the ensuing general election, no nomination can be made according to the usual laws governing primary elections, the statutory *limitation* as to printing names on the general election ballot does not necessarily apply. Therefore the political parties themselves, or their official representative committees, may exercise their inherent party prerogative of selecting a candidate and certifying his name to be printed on the general election ballot, where no intendment of the primary election law is to be circumvented or violated by so doing. . . .

"As to the importance of parties in American Democracy, see 1 Bryce Modern Democracies, Chapter XI, where it is stated that nominations proposed by established political parties are to be regarded as a part of our governmental system, because the practice of making party nominations is as old as democracy itself, and has now become an almost indispensable feature of our constitutional elective systems, state and national . . . when there has been no candidate nominated as the result of a primary election, and it is clearly demonstrated that under no circumstances can there be a primary election nomination legally made, because of the occurrence of a vacancy in office subsequent to a primary and prior to the succeeding general election, it cannot be said that the terms of Chapter 12038, *supra*, should be so strictly construed as to inhibit the exercise of a party's traditional powers to nominate a candidate according to its own rules and regulations and have that candidate accepted and recognized as such for the purpose of having his name printed on the ballot under that Act, although his status as a nominee under such circumstances is not that of

one having an exclusive right to have his name appear printed on the ballots of the general election. This is necessarily the rule because we can find nothing in our system of primary election laws which was intended to forbid customary party activities in cases where the subject matter is neither expressly nor impliedly regulated by statutory provisions. . . .

"So Chapter 140657, *supra*, providing that the County Commissioners shall cause to be printed on the general election ballots only the names of candidates who have been put in nomination by primary election or by party executive committee as a substitute for a vacancy in nomination by primary election, does not forbid the County Commissioners to print on the general election ballots at the petition and instance of a recognized political party of this State, a candidate duly nominated by such party for a vacancy in office that could not have been legally filled at a primary election because occurring too late to be voted on therein, said chapter being negative in character and the prohibition not extending to such situation."

We, therefore, conclude that the nomination of candidates for the office of mayor to be filled at the forthcoming municipal election should be left to the political parties to be selected in accordance with their rules and regulations and that certificates of nomination from the political parties be accepted by the county board of elections and used in preparing the official election ballots.

However, the rules of the political parties are not before us, and it may not be feasible for a political party to nominate its candidate for the office of mayor. In any event, the board of elections will prepare official election ballots, which shall be in accordance with the Pennsylvania Election Code of 1937, supra, art. X, sec. 1003, 25 PS §2963, generally, and specifically as in the case no candidates have been nominated for an office (see section 1003 (e) ). This will give the voter an op-

portunity to exercise the right of suffrage by writing in the name of his candidate or using what is commonly called a "sticker". See DeWalt et al. v. Bartley et al. (No. 2), supra, Pennsylvania Election Code of 1937, sec. 1003(a), and Hamilton et al. v. Raub, etc., 131 Kan. 392, 292 Pac. 396 (1930). In the Hamilton case, supra, the Supreme Court of Kansas in dealing with a situation where the facts were almost identical with those under consideration, and after holding that a political party's committee was without power to nominate a candidate for the unexpired term, concluded that the nomination should be by ballot which provided an opportunity for the electorate to vote for a candidate by use of stickers or by writing in his name in the following language (p. 399):

"The result is that the writ prayed for must be denied. But since there is a county commissioner from the second commissioner district to be elected at the general election to be held November 4, 1930, to fill the unexpired term of J. A. Cole, deceased, defendant should prepare the ballot so there is a place thereon for the electors to cast their ballots, such as the following:

"For County Commissioner, Second District.
(Vote for one.)

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . □"

We further conclude that the said county board of elections shall do and take all and every necessary and proper measures to hold such election for the office of mayor at the next municipal election on November 4, 1941.

It being clear that an election must be held on November 4, 1941, to fill a mayoral vacancy, it is equally clear that the valuable right of suffrage of every citizen of Philadelphia to elect the chief executive shall not be denied merely because the legislature unfortunately has failed to expressly provide the machinery for conducting such an election. The argument that the legis-

lature's failure is fatal and forecloses the right is unsound. To use the expression of Chief Justice Paxson in DeWalt et al. v. Bartley et al. (No. 2), supra, "This is merely the argumentum ab inconvenienti." Nor can it be said that, in pointing out the machinery, we are judicially legislating. It is a fundamental democratic principle that the right of suffrage of a citizen cannot be denied, qualified, or restricted and is only subject to such regulations as to the manner of exercise as are necessary for the peaceable and orderly exercise of the same right by other electors. This principle permeates every decision on the subject.

The traditional right of political parties to nominate candidates, under similar circumstances, without the necessity of a primary and, where such is not feasible, the right of the electorate to express its choice, where no nominations have been made, by use of a ballot containing ample space to write or paste in the name of the candidate in such space, has been approved and followed in this and other jurisdictions. To adopt either of these methods will give a citizen his right to express his own individual choice.

VI. Accordingly, we enter the following

### Final decree

And now, to wit, September 15, 1941, upon consideration of the foregoing case, it is ordered, adjudged, and decreed, as follows:

1. That plaintiff's prayer for relief be refused;

2. That defendants, Morton Witkin, James C. Clark, and John J. Hennessey, constituting the County Board of Elections of Philadelphia County, be and they are hereby ordered and directed to receive nomination certificates of all political parties, each nominating its respective candidate for the office of mayor to be voted upon at the election to be held in the City and County of Philadelphia on November 4, 1941, at the same time as the regular municipal election, said nominations to

be made in accordance with the respective party rules of said parties, provided, however, that said certificates shall be filed with said board on or before October 4, 1941, at 12 o'clock noon; and to print official ballots with the names of such candidates thereon, with blank space or spaces thereunder in accordance with article X, sec. 1003, of the Pennsylvania Election Code of June 3, 1937, P. L. 1333, and otherwise in conformity with said Act of 1937.

3. That in the event no nominations are made by political parties, for any reason whatsoever, on or before October 4, 1941, at 12 o'clock noon, then defendants, Morton Witkin, James C. Clark, and John J. Hennessey, constituting the County Board of Elections of Philadelphia County, shall cause to be printed official election ballots for the municipal election to be held on November 4, 1941, as provided for in the Pennsylvania Election Code of June 3, 1937, P. L. 1333, art. X, sec. 1003, generally and specifically as in case no candidate for an office to be filled has been nominated therefor, so that the electorate in order to vote for a candidate for mayor at that time may do so by writing or pasting the name of such candidate in the blank space provided for that purpose.

4. That said defendants, constituting said county board of elections, be and they are hereby ordered and directed to take forthwith all and every other necessary and proper measures to hold said election for the office of mayor of the City and County of Philadelphia at the time of the municipal election to be held on November 4, 1941, in the City and County of Philadelphia, including, but not by way of limitation, providing all facilities for and the printing of the names of the candidates nominated as aforesaid for the office of mayor, with proper blank space or spaces thereon—or, in case no candidate or candidates have been nominated therefor, to provide a blank space so that a voter may write or paste his candidate's name in such blank space— upon the official ballot or voting machines containing

the names of the candidates for all other offices to be voted upon at such municipal election, in order that said candidates for the office of mayor may be voted upon by the electorate in the same manner as all other candidates for all other offices at said election.

5. Costs to be paid by plaintiff.

NOTE.—This decision was reversed by the Supreme Court in 343 Pa. 1.